**Geraldine HARRIS, et al.,
Plaintiffs-Appellants,**

v.

**CITY OF CANTON, OHIO, et al.,
Defendants-Appellees.**

Nos. 81–3696, 82–3560.

United States Court of Appeals,
Sixth Circuit.

Argued May 2, 1983.

Decided Jan. 13, 1984.

---

Steven M. Fitten, Dayton, Ohio, for plaintiffs-appellants.

Thomas P. Albu, Asst. Law Director, William J. Hamann (argued), Canton Law Dept., Canton, Ohio, for defendants-appellees.

Before KENNEDY and JONES, Circuit Judges, and COHN, District Judge.*

NATHANIEL R. JONES, Circuit Judge.

This is a consolidated appeal in which the plaintiffs-appellants, Geraldine Harris, Bernadette Harris and Willie G. Harris, appeal from two separate district court orders dismissing their civil rights complaint. The initial complaint was dismissed in September of 1979 for want of prosecution. A subsequent request to set aside the default judgment entered pursuant to that dismissal was denied. Upon refiling of the complaint, the action was again dismissed. This second dismissal was based on the district court's determination that the action, when refiled, was barred by the applicable statute of limitations. We find that the refiled action was not untimely and, thus, that dismissal on that ground was inappropriate. Since this conclusion requires vacation of the final dismissal and a remand to the district court for further proceedings, we decline to decide whether the initial dismissal and the subsequent refusal to set aside the default judgment would justify a similar remand order by this Court.

## I.

At approximately 7:15 a.m. on April 26, 1978, Geraldine Harris was driving with her daughter, Bernadette, when she was stopped by the Canton police and cited for speeding. The events which followed provide the basis for the present action. The appellants claim that, immediately after the citation was issued, Mrs. Harris was arrested without probable cause and verbally abused. Several other officers soon arrived with a paddy wagon and threw Mrs. Harris into it "feet first." When Bernadette Harris attempted to walk toward her mother, one of the officers purportedly punched her in the chest and knocked her away from the wagon. The arresting officer then ordered the Harris family car impounded, despite pleas from Bernadette that she be allowed to take it home.

The appellants claim that Mrs. Harris was then taken to the Canton police station where she was fingerprinted, booked and strip-searched. In addition, the officers are charged with failing to provide proper medical attention when needed and failing to advise Mrs. Harris of her rights. No charges other than speeding were ever brought against Mrs. Harris or her daughter. Mrs. Harris was subsequently released

* The Honorable Avern Cohn, United States District Court for the Eastern District of Michigan, sitting by designation.

into the custody of her husband and son. Both she and Bernadette were apparently taken to a hospital where they received appropriate medical care.

The Harrises filed a written complaint with the mayor, safety director and city law director. The complaint was referred to the Canton police chief. The appellants contend that no officers were investigated and no further action was taken pursuant to the complaint. On April 19, 1979 the plaintiffs filed a complaint against the City of Canton, its mayor, its law director, the entire police department, the police chief individually, and all individual officers involved in Mrs. Harris' arrest. The complaint alleged that all defendants, now appellees, had violated the appellants' civil rights by arresting and assaulting Mrs. Harris and her daughter following a mere speeding infraction. The complaint alleges violations of 42 U.S.C. §§ 1981, 1983, 1985 and 1986 and asserts direct causes of action under the 4th, 5th, 8th, 13th and 14th amendments to the United States and Ohio Constitutions. Willie G. Harris filed a pendent state claim for medical expenses and loss of consortium. A summons and marshal's service form were properly executed and delivered to the clerk at the time of filing. The filing fee and United States Marshal's service charge were paid immediately. The Marshal did not attempt to serve the complaint upon the defendants, however, apparently feeling free not to act since outstanding fees for other cases were still owed by plaintiffs' counsel.

The action was filed in the Northern District of Ohio, Eastern Division. On May 17, 1979, Judge Robert B. Krupansky filed a pretrial order requiring the plaintiffs to effect service of process within thirty days of the filing of the complaint. That order provided that absent such service the action would be dismissed *sua sponte*. On September 5, 1979, the complaint still not hav-

ing been served by the U.S. Marshal, the trial judge dismissed the plaintiffs' complaint for want of prosecution. Other than the statement in the May 17 pretrial order itself, no prior notice of the dismissal was given to the parties and no hearing to show cause for failure to comply with the pretrial order was held. In addition, it appears that none of the parties were notified once the dismissal was entered.

On July 17, August 16 and again on November 2, 1979, counsel for the plaintiffs communicated with the U.S. Marshal's office regarding service. Service was finally perfected on November 2, with all, including the U.S. Marshal, apparently unaware of the prior dismissal. Following service of the complaint, the local news media contacted the court to verify the existence of the law suit. It was not until the press coverage on November 5, 1979 that the parties became aware that the case had been dismissed.

On January 8, 1980, the plaintiffs filed a second action. The defendants responded by claiming that the applicable statute of limitations barred a second suit. The case was now assigned to Judge John R. Manos who instructed the parties to file briefs on all issues relevant to the statute of limitations defense. In response, the appellants filed an amended complaint detailing the nature of the civil rights violations charged.

The appellants then filed a 60(b) motion to vacate the September 5, 1979 dismissal by Judge Krupansky. The motion was based on claims of mistake, inadvertence and neglect on behalf of the clerk and U.S. Marshal, and on the lack of notice to the plaintiffs. Although the motion was unopposed, the motion was denied, without explanation, *nunc pro tunc* (as of September 1, 1980) on October 9, 1981. The denial of that motion is the basis of appeal No. 81–3969.[1]

---

1. This motion was made pursuant to Rule 60(b), Federal Rules of Civil Procedure. That rule provides, in pertinent part:

   On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order,

   or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; ... (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not

Following Judge Krupansky's action on the matter, Judge Manos proceeded to consider the statute of limitations argument as it applied to the second filing. On July 27, 1982, the case was dismissed, the district judge finding that the Ohio one year statute of limitations for assault, battery, malicious prosecution and false imprisonment barred the action. Judge Manos also found the Ohio Savings Statute inapplicable, concluding that the second action did not satisfy the literal requirements for its application. Appeal No. 82–3560 is from Judge Manos' order.

The appellants essentially seek the same remedy in both appeals before this Court to have their civil rights action reinstituted so that it may proceed on the merits. Since our disposition of appeal No. 82–3560 effectively grants that remedy, we decline to resolve the issues raised in the companion case.[2]

## II.

The gravamen of the appellants' complaint, as amended, is a series of civil rights violations arising out of the incidents which allegedly occurred on April 26, 1978.[3] Con-

---

more than one year after the judgment, order or proceeding was entered or taken....

**2.** While we note that this Court's analysis in *Carter v. City of Memphis,* 636 F.2d 159 (6th Cir.1980), lends strong support to the appellants claims, we also note that an appellate court is still only to reverse a district court's actions in this context upon a clear showing of an abuse of discretion, *Marshall v. Monroe & Sons, Inc.,* 615 F.2d 1156, 1160 (6th Cir.1980), a standard which is generally a difficult one to satisfy. *But see United Coin Meter Co., Inc. v. Seaboard,* 705 F.2d 839 (6th Cir.1983) (any doubt should be resolved in favor of the petition to set aside default judgment so that case may be decided on its merits.)

**3.** The appellants have also asserted direct causes of action under the 4th, 5th, 8th, 13th and 14th amendments to the United States Constitution. It is unclear, however, to what extent such direct actions can be asserted against local officials. While this Court has recognized direct causes of action against local officials under 28 U.S.C. § 1331 for constitutional violations, *Jones v. City of Memphis,* 586 F.2d 622 (6th Cir.1978), *cert. denied,* 440 U.S. 914, 99 S.Ct. 1230, 59 L.Ed.2d 464 (1979), that position was taken prior to the Supreme Court's decision in *Monell v. New York City Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). There, the Supreme Court partially overruled its earlier decision in *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 and held that municipalities and local officials were "persons" within the meaning of § 1983 and, thus, were susceptible to suit thereunder. Following *Monell* various circuits have required all actions against local officials to be brought under § 1983. Since there is a legislatively-created remedy for individuals injured by federal constitutional violations by such parties, these courts reason that there is no need for court-created remedies directly under the Fourteenth Amendment and that the analysis in *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 91

S.Ct. 1999, 29 L.Ed.2d 619 would not apply. See *Turpin v. Mailet,* 591 F.2d 426 (2d Cir. 1979); *Owens v. City of Independence,* 589 F.2d 335 (8th Cir.1978), *reversed on other grounds,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), *rehearing denied,* 446 U.S. 993, 100 S.Ct. 2979, 64 L.Ed.2d 850 (1980); *Cale v. Covington,* 586 F.2d 311 (4th Cir.1978); *Molina v. Richardson,* 578 F.2d 846 (9th Cir. 1978), *cert. denied,* 439 U.S. 1048, 99 S.Ct. 724, 58 L.Ed.2d 707 (1978). This court has not specifically addressed the issue since *Monell,* with actions generally proceeding under both § 1983 and § 1331. *But see Hays v. Jefferson County,* 668 F.2d 869 (6th Cir.1982) (dissenting opinion).

Were we to conclude that such actions were permissible, we would have to proceed to determine what statutory limitation period would best serve to fill in the gap in this federal remedy. See *DelCostello v. International Brotherhood of Teamsters, et al.,* —— U.S. ——, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). While it is arguable that the resolution of that issue in the § 1983 context should also control here, *see Hays v. Jefferson County,* 668 F.2d at 874, § 1983 liability is created by statute while a *Bivens*-type action is one implied directly under the Constitution. Since all the statutory provisions which might arguably apply to such broad-based constitutional claims exceed the narrow one-year period applied by the district court here (limitations period for actions not otherwise enumerated, period for injury to personal as opposed to property rights or period for liabilities created by statute), we decline to decide whether *Bivens* actions may be maintained in this context and, if so, what precise statutory limitations period should be applied to them. It is sufficient to note that, for the same general reasons which lead us to conclude that the appellant's civil rights claims were timely at the point when the second action was filed, we believe that to the extent *Bivens* actions were properly brought against these defendants, they were not barred by the statute of limitations.

gress has not established a statute of limitations for most civil rights actions. Significantly, no statute of limitations was directly written into §§ 1981, 1983 or 1985.[4] In such situations, rather than assume that no limitation on the actions was intended, it is up to the courts "to 'borrow' the most suitable statute or other rule of timeliness from some other source." *DelCostello v. International Brotherhood of Teamsters, et al.,* —— U.S. ——, ——, 103 S.Ct. 2281, 2287, 76 L.Ed.2d 476 (1983). The general, though not universal, practice is for federal courts to apply the state law limitations period governing the most closely analogous cause of action.[5] *Id.; see also Board of Regents v. Tomanio,* 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980); *Mason v. Owens-Illinois, Inc.,* 517 F.2d 520 (6th Cir.1975).

In an effort to comport with this general rule Judge Manos reasoned that the actions underlying the claimed constitutional and civil rights violations would give rise to, if prosecuted in a common law action in state court, actions for assault, battery and false imprisonment. Accordingly, the court determined that the appropriate statute of limitations to be applied in this case is that set out in Ohio Revised Code § 2305.11 which reads, in pertinent part: "An action for libel, slander, assault, battery, malicious prosecution, false imprisonment . . . shall be brought within one year after the cause of action accrued . . . ." The court then concluded that since the second complaint was filed in January 1980, more than a year and a half after the incidents complained of, the action was not timely.

The appellants argue that when examining a civil rights complaint the district court should do more than merely look to the underlying nature of a would-be state tort action. Instead, the Harrises claim that, given their nature, civil rights actions are necessarily broader than the mere torts which may give rise to them. Accordingly,

the appellants assert that the district court erred in taking such a narrow view of the case before it when determining the applicable limitations period. In this case, however, we need not decide whether the district court erred in taking such a narrow view of the applicable limitations period.

█ For, even if this Court were to agree that the one year statute of limitations for assault and false imprisonment were applicable here, the district court's order dismissing the second complaint was improper because of that court's refusal to apply the Ohio Savings Statute as enumerated in O.R.C. § 2305.19. That statute provides in pertinent part:

> In an action commenced or attempted to be commenced, if in due time a judgment for the plaintiff is reversed, or if the plaintiff fails otherwise than upon the merits, and the [time] limit for the commencement of such action at the date of reversal or failure has expired, the plaintiff, or, if he dies and the cause of action survives, his representatives may commence a new action within one year after such date.

In *Cero Realty Corp. v. American Manufacturers Mutual Insurance Co.,* 171 Ohio St. 82, 167 N.E.2d 774 (1960) the Ohio Supreme Court held that in order for this provision to be available to "save" an action, four criteria must be met: (1) the action must have been commenced or attempted to be commenced within the applicable period of limitations; (2) the failure of the plaintiff in the action was otherwise than upon the merits; (3) at the date of such failure, the time limit for commencing the action had expired; and (4) the plaintiff refiled the action within one year of such failure. *Id.* 167 N.E.2d at 777.

The district court in the present case reviewed these elements of the Ohio statute and concluded that the third had not been

---

**4.** Section 1986 has its own one year limitation period which appears to foreclose the assertion of a claim on that basis.

**5.** *See e.g. DelCostello v. International Brotherhood of Teamsters,* —— U.S. ——, 103 S.Ct.

2281, 76 L.Ed.2d 476 (1983) (applying § 10(b) of the National Labor Relations Act to actions under *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), finding state statutes unsuitable.

satisfied. The complaint was initially filed seven days prior to one year after the incidents complained of. The court reasoned that the filing of the action tolled the statute of limitations at that point. Thus, the court held that once the action was dismissed, seven days still remained before the statute of limitations, or the time period for commencing the action, would have expired within the meaning of the Ohio statute. Accordingly, because the plaintiff failed to file the second action within those seven days, the district court concluded that the terms of the savings statute had not been met and that it could not, therefore, be invoked to prevent dismissal of the appellants' action.

■ We are compelled to disagree with this interpretation of the Ohio statute. When the statute provides that the limitations period must have expired by the time the original action fails, we believe it is necessarily referring to the original statutory period, as measured *uninterrupted* from the date the action accrued. This appears to be the most practical reading of this provision. If the statute contemplated the tolling of the limitations period upon the filing of the original action, the mere inclusion of the statute's own third requirement would render the statute ineffective. In every case, an action must be brought before expiration of the original limitations period, leaving *some* time remaining. If

tolling were to occur at that point and continue until the action failed, the original action would never have "expired" by the date of the failure and the third requirement for the savings statute would *never* be satisfied. We do not choose to read the Ohio savings statute as having nullified itself by its own terms. Rather, we believe the third requirement of the savings clause was intended to apply to cases in which the original limitations period has run, when a plaintiff's case is dismissed, without consideration of any tolling effect of the original filing. *See Uhas v. New York Central R. Co.*, 70 Ohio App. 464, 46 N.E.2d 677 (Ct. App.1942).[6]

Moreover, it appears that the district court's tolling analysis is far too broad. While the limitations period is "tolled" for some purposes upon the filing of a complaint, this notion of tolling is a very limited one.[7] Generally, but for outside influences which may sometimes toll the running of the limitations period (e.g. insanity, minority, etc.) the statute of limitations is not otherwise "interrupted." This is obvious from the doctrine which indicates that dismissals without prejudice operate to leave the parties as if no action had ever been commenced. *See e.g. Hall v. Kroger Baking Co.*, 520 F.2d 1204, 1205 (6th Cir. 1975) *citing Bomer v. Ribicoff*, 304 F.2d 427 (6th Cir.1962). *See also Moore v. St. Louis Supply Co., Inc.*, 539 F.2d 1191, 1194 (8th

**6.** The district court's reliance on *Uhas* for the contrary proposition is clearly misplaced. The plaintiff had filed three actions. The first was dismissed within the two year limitations period. The second, filed within that same two year period, was dismissed for want of prosecution several months after the two year period, running uninterrupted from the point of the accrual of the action, had elapsed. The third, filed over three years after the cause of action had accrued but within one year of the dismissal of the second action, was deemed "saved" by virtue of O.R.C. § 2305.19. The only justifiable reading of this case is that the period that must "expire" in order to satisfy the third requirement of the savings statute is the original limitations period, as measured from the date the action accrued.

**7.** By virtue of Rules 3 and 4 of the Federal Rules of Civil Procedure, an action is com-

menced for limitations purposes at the point of filing, even though service of process does not occur until some later date. Though courts have at times spoken of this effect in terms of a "tolling" of the limitations period, the result is the same as if there were simply no requirement that process be served within any limitations period, provided it follows commencement of the suit within a "reasonable" period. The very cases the district court cites for its broad tolling analysis are actually limited to the very set of circumstances addressed above. The only issue before those courts was whether the action could be timely when the running of the statutory period falls somewhere between the filing of the complaint and the service of process. The district court here has simply quoted their language out of context. *See United States v. Wahl*, 583 F.2d 285 (6th Cir. 1978); *Isaacks v. Jeffers*, 144 F.2d 26 (10th Cir.1944).

Cir.1976). If the period of limitations has run by the point of such a dismissal, any new action is generally untimely. *Id. See also Goodman v. City Prods. Corp.,* 425 F.2d 702 (6th Cir.1970); *Thompson v. Brennan,* 351 F.2d 268 (6th Cir.1965). Obviously, if automatic tolling occurs for all purposes whenever a complaint·is filed, the analysis in these cases would be pointless and most of their holdings incorrect. We simply find no support for the conclusion that such a broad tolling process exists under the federal rules and we believe that the district court erred in basing its conclusion on the assumption that one does.

Accordingly, we are convinced that the second action was timely when filed and should not have been dismissed. The district court not only improperly concluded that a one year limitations period was appropriate for this civil rights action, but failed to properly apply the Ohio savings statute once having reached that conclusion. Thus, for the reasons articulated above, the judgments in both actions are VACATED and this cause REMANDED for further proceedings.