**Laurel C. THOMAS, Plaintiff-Appellant,**

v.

**Walter SHIPKA, in his capacity as Clerk of the Parma Municipal Court, Defendant-Appellee.**

**No. 86–3230.**

United States Court of Appeals, Sixth Circuit.

Argued March 13, 1987.

Decided May 1, 1987.

---

Andrew Boyko, Stephan P. Bond (argued), Parma, Ohio, for defendant-appellee.

Before ENGEL, KRUPANSKY and GUY, Circuit Judges.

RALPH B. GUY, Jr., Circuit Judge.

Plaintiff, Laurel Thomas, appeals the district court's *sua sponte* dismissal of her civil rights action for failure to comply with the statute of limitations. For the following reasons, the judgment of the district court is affirmed.

On April 5, 1985, plaintiff filed this suit in the United States District Court for the Northern District of Ohio claiming that she had been wrongfully discharged by her employer in violation of her rights under 42 U.S.C. § 1983 and the first and fourteenth amendments to the United States Constitution. Prior to her dismissal, plaintiff had worked for six and one-half years as a deputy clerk in the Parma Municipal Court. On April 7, 1983, plaintiff was fired by the clerk of the court, defendant, Walter Shipka. Plaintiff alleged that the reasons given for her dismissal were merely pretextual and that the defendant, who is a Democrat, dismissed her because of her close working relationship with a Republican judge and because of the defendant's desire to replace her with a Democratic loyalist.

On April 29, 1985, defendant filed a motion to dismiss alleging, *inter alia*, a statute of limitations defense. The district court denied the motion finding that the recent decision by the United States Supreme Court in *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), called for the application of Ohio's two year statute of limitations for general personal injury actions.[1] On January 17, 1986, defendant filed a motion for summary judgment. In response, plaintiff filed a motion for an enlargement of time to respond. In that motion plaintiff noted this court's recent decision in *Mulligan v. Hazard*, 777 F.2d 340 (6th Cir.1985), *cert. denied,* — U.S. ——, 106 S.Ct. 2902, 90 L.Ed.2d 988

Edward G. Kramer (argued), Kramer & Tobocman, Cleveland, Ohio, for plaintiff-appellant.

---

1. Ohio Rev.Code § 2305.10 (Supp.1986) provides in part: "An action for bodily injury or injuring personal property shall be brought within two years after the cause thereof arose."

(1986), wherein we held that § 1983 claims are governed by Ohio's one year statute of limitations.[2] In light of *Mulligan*, the district court reconsidered its previous ruling and held that both plaintiff's § 1983 claims and her direct constitutional claims were barred by the one year statute of limitations. Consequently, plaintiff's claims were dismissed *sua sponte*.

Plaintiff makes three arguments on appeal. First, plaintiff asks us to reverse our decision in *Mulligan* and apply Ohio's two year statute of limitations to § 1983 claims. In the alternative, plaintiff argues that we should not give retroactive effect to the *Mulligan* decision in the instant case. Finally, plaintiff contends that even if we find that her § 1983 claims are time-barred, we should still allow her to bring her claims directly under the Constitution pursuant to our jurisdictional authority contained in 28 U.S.C. § 1331. Plaintiff further contends that these direct constitutional claims are subject to Ohio's six year statute of limitations which applies to actions based on a statute.[3] We address each of these issues separately.

## I.

In *Wilson v. Garcia*, the Supreme Court instructed the federal courts "to select, in each State, the *one* most appropriate statute of limitations for all § 1983 claims." 471 U.S. at 275, 105 S.Ct. at 1947 (emphasis added). In response to the Supreme Court's directive, this court examined the various Ohio statutes and held that the one year statute of limitations contained in Ohio Rev. Code § 2305.11 governs all § 1983 claims filed in Ohio. In *Mulligan*, we stated:

As noted above, Ohio has two statutes of limitations which relate to personal injury actions, Ohio Rev.Code §§ 2305.10 and 2305.11. In our opinion, § 2305.11 is the more appropriate of the two statutes of limitations for actions arising under the civil rights statutes. As the Supreme Court noted in *Wilson*, Congress enacted the Civil Rights Act of 1871 in order to combat the violence that was being perpetrated by the Ku Klux Klan and other organizations against the newly emancipated slaves. The concern of Congress, thus, was with perpetuators of intentional tortious conduct. While both §§ 2305.10 and 2305.11 theoretically encompass intentional tort actions, § 2305.-11, which applies to actions involving assaults, batteries, and the like, more specifically encompasses the sorts of actions which concerned Congress as it enacted civil rights statutes. Accordingly, we hold that the one year limitations period contained in § 2305.11 governs Mulligan's actions.

777 F.2d at 344 (footnote omitted).

Plaintiff urges us to adopt the two year Ohio statute of limitations which we expressly rejected in *Mulligan*. Plaintiff argues that the *Mulligan* court misinterpreted the Supreme Court's ruling in *Wilson*, and therefore, we should reverse our previous decision. It is well established that one panel of this court cannot overrule the decision of a previous panel. *See Salmi v. Secretary of Health and Human Services*, 774 F.2d 685, 689 (6th Cir. 1985). Consequently, we are bound by our previous decision in *Mulligan* which requires us to apply the Ohio one year statute of limitations to plaintiff's § 1983 claims.

## II.

Plaintiff contends that the *Mulligan* decision should not be given retroac-

---

**2.** Ohio Rev.Code § 2305.11 provided in part: "An action for libel, slander, assault, battery, malicious prosecution, false imprisonment, or malpractice, ... shall be brought within one year after the cause thereof accrued...."

We note that the Ohio Revised Code has been amended since our decision in *Mulligan* to create a special section for assault and battery retaining the one year limitations period. *See* Ohio Rev.Code § 2305.11 (Supp.1986). This amendment does not affect our previous analysis in *Mulligan* or in the instant case.

**3.** Ohio Rev.Code § 2305.07 provides: "Except as provided in § 1302.98 of the Revised Code, an action upon a contract not in writing, express or implied, or upon a liability created by statute other than a forfeiture or penalty, shall be brought within six years after the cause thereof accrued."

tive effect in the instant case. The *Mulligan* court, however, expressly held that the one year statute of limitations should be applied retroactively. 777 F.2d at 343–44. We reiterate that we are bound by the prior decisions of this court. Our decision in *Mulligan* is controlling in this case and requires us to affirm the district court's dismissal of plaintiff's § 1983 claims for failure to comply with the applicable one-year statute of limitations. *See Jones v. Shankland*, 800 F.2d 77, 80 (6th Cir.1986) (*Mulligan* is *stare decisis* in this circuit and should be applied retroactively).

### III.

Despite the dismissal of her § 1983 claims, plaintiff argues that she should still be allowed to proceed with a cause of action based directly on the first and fourteenth amendments of the United States Constitution and relying on general federal question jurisdiction under 28 U.S.C. § 1331. Plaintiff asserts that these claims are separate and independent from her § 1983 claims and that they should be subject to Ohio's six year statute of limitations which applies to actions based on a statute.

■ In a footnote to our opinion in *Harris v. City of Canton*, 725 F.2d 371 (6th Cir.1984), we stated that it was "unclear" whether this circuit should continue to recognize direct constitutional claims against local officials and municipalities in light of the Supreme Court's decision in *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (holding that municipalities are "persons" within the meaning of § 1983). 725 F.2d at 374 n. 3. Today we resolve this question by holding that in cases where a plaintiff states a constitutional claim under 42 U.S.C. § 1983, that statute is the exclusive remedy for the alleged constitutional violations.

Section 1983 provides in part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage of any state or territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

We begin our analysis with a recitation of this familiar statute in order to emphasize its broad scope which provides a cause of action for the "deprivation of *any* rights, privileges, or immunities secured by the Constitution...." *Id.* (emphasis added). Although § 1983 encompasses every conceivable type of constitutional violation, it only provides a remedy against persons acting under color of state law, i.e., state and local officials and local units of government.

In the instant case, there is no question that plaintiff has stated a claim under § 1983 in that she has alleged that her rights under the first and fourteenth amendments were violated by a local official acting pursuant to his official authority. Notwithstanding the availability of a remedy under § 1983, plaintiff contends that she had an additional separate theory of recovery for her alleged constitutional violations based on 28 U.S.C. § 1331 which defines general "federal question" jurisdiction. Section 1331 provides in part: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

In support of her argument for the existence of an independent direct constitutional action, plaintiff cites to two lines of cases which have recognized such claims. First plaintiff points to the landmark decision of *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), where the United States Supreme Court held that a plaintiff may bring a suit for money damages against a *federal agent* for violations of the plaintiff's fourth amendment rights with jurisdiction premised upon the federal question statute. *Id.* at 396, 91 S.Ct. at 2004. In *Bivens*, the Supreme Court found it necessary to create a direct cause of action under the Constitution because § 1983 does not provide a

remedy for constitutional violations committed by federal officers acting under federal laws. In the instant case, plaintiff is suing a *local* official, who is a "person" within the meaning of § 1983. Therefore, *Bivens* is distinguishable both on its facts and its rationale.

We note that the Supreme Court has extended the *Bivens* rationale to allow direct claims arising under the eighth amendment and the fifth amendment. *See Carlson v. Green*, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980); *Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979). In *Davis*, the Court found that a female secretary who had been discharged from her employment by a United States Congressman could bring an action directly under the fifth amendment to obtain money damages from her employer for alleged sexual discrimination. 442 U.S. at 241–44, 99 S.Ct. at 2274–77. In *Green*, the Court held that federal prison officials could be held liable for money damages in an action brought directly under the eighth amendment for failure to provide proper medical attention to a prisoner. 446 U.S. at 20–24, 100 S.Ct. at 1472–74. Both *Davis* and *Green* involved constitutional claims brought against *federal* officials who were not amenable to suit under § 1983. Thus, like *Bivens*, these cases are distinguishable from the case *sub judice* where the plaintiff had the opportunity to avail herself of the remedy provided by § 1983.

The Supreme Court has never recognized a cause of action arising directly under the Constitution in a case where § 1983 was available as a remedy. Moreover, the Court's opinion in *Green* strongly suggests that it would not imply a direct constitutional cause of action in such a case. In *Green*, the defendants argued that the plaintiffs already had a remedy under the Federal Tort Claims Act (FTCA). Nevertheless, the Court held that a *Bivens*-type action should be implied unless the defendants could show (1) "special factors counseling hesitation in the absence of an affirmative action by Congress" or (2) "that

Congress has provided an alternative remedy which it explicitly declared to be a *substitute* for recovery directly under the Constitution and viewed as equally effective." 446 U.S. at 18–19, 100 S.Ct. at 1471–72 (emphasis in original) (citations omitted). The Court concluded that it should imply a direct cause of action because Congress had not expressly stated that the FTCA was an exclusive remedy and because "the *Bivens* remedy is more effective than the FTCA remedy." *Id.* at 20, 100 S.Ct. at 1472.

In contrast to the FTCA, § 1983 provides a substitute remedy which is equally effective to a direct cause of action under the Constitution. It is clear that the same standards apply to suits brought under § 1983 and *Bivens*-type claims since both provide remedies for violations of the same constitutional protections. *See, e.g., Butz v. Economou*, 438 U.S. 478, 499, 98 S.Ct. 2894, 2907, 57 L.Ed.2d 895 (1978) (applying same standards of immunity to state officials under § 1983 and federal officials sued on similar grounds under direct constitutional actions). Thus, in light of the rationale followed by the Supreme Court in *Green*, we conclude that it is unnecessary and needlessly redundant to imply a cause of action arising directly under the Constitution where Congress has already provided a statutory remedy of equal effectiveness through which the plaintiff could have vindicated her constitutional rights. *See Graves v. Wayne County*, 577 F.Supp. 1008, 1013 (E.D.Mich.1984) ("*Green* implicitly counsels that § 1983, not *Bivens*, is the appropriate vehicle for redressing constitutional claims against *state* officials") (quoting *Small v. Inhabitants of the City of Belfast*, 547 F.Supp. 761, 764 (D.Me.1982) (emphasis in *Small* )).

In addition to the cases which have allowed *Bivens*-type claims against federal officers, plaintiff cites to several cases in which this court has recognized claims arising directly under the Constitution brought against local municipalities.[4]

---

**4.** We note that in the instant case, the sole defendant is an individual local official and that the plaintiff has not alleged a claim against the

municipality itself. Nevertheless, the cases involving constitutional claims against municipalities discuss many of the same principles at

In *Jones v. City of Memphis*, 586 F.2d 622 (6th Cir.1978), *cert. denied*, 440 U.S. 914, 99 S.Ct. 1230, 59 L.Ed.2d 464 (1979), we stated:

This circuit has held consistently that a direct cause of action under 28 U.S.C. § 1331 for violation of constitutional rights is available against a municipality. *See Gordon v. City of Warren*, 579 F.2d 386, 389 (6th Cir.1978); *Wiley v. Memphis Police Department*, 548 F.2d 1247, 1254 (6th Cir.), *cert. denied*, 434 U.S. 822 [98 S.Ct. 65, 54 L.Ed.2d 78] (1977); *Amen v. City of Dearborn*, 532 F.2d 554, 559 (6th Cir.1976); *Hanna v. Drobnick*, 514 F.2d 393, 398 (6th Cir.1975); *Bosely v. City of Euclid, supra*, 496 F.2d [193] at 195 [ (6th Cir.1974) ]; *Foster v. City of Detroit*, 405 F.2d 138, 144 (6th Cir.1968); *Foster v. Herley*, 330 F.2d 87, 91 (6th Cir.1964).

At least six other circuits have reached this conclusion, based upon the teachings of *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). *See Turpin v. Mailet*, 579 F.2d 152 (2d Cir.1978) (*en banc*); *Owen v. City of Independence*, 560 F.2d 925, 932–34 (8th Cir.1977), *petition for cert. pending; McDonald v. Illinois*, 557 F.2d 596, 604 (7th Cir.), *cert. denied*, 434 U.S. 966, 98 S.Ct. 508, 54 L.Ed.2d 453 (1977); *Kite v. Kelley*, 546 F.2d 334, 337 (10th Cir.1976); *Davis v. Passman*, 544 F.2d 865, 873 (5th Cir.1977); *Cox v. Stanton*, 529 F.2d 47, 50–51 (4th Cir.1975). *See also Gray v. Union County Intermediate Education District, supra*, 520 F.2d [803] at 805 [ (9th Cir.1975) ]. *Cf. Gagliardi v. Flint*, 564 F.2d 112, 114–16 (3rd Cir.1977), *petition for cert. pending; Kostka v. Hogg*, 560 F.2d 37, 41 n. 5 (1st Cir.1977).

586 F.2d at 624.

All of the cases cited above were decided under the then prevailing rule that munici-

palities were not "persons" within the meaning of § 1983 and hence, were immune from liability under that statute.[5] *See Monroe v. Pape*, 365 U.S. 167, 187, 81 S.Ct. 473, 484, 5 L.Ed.2d 492 (1961). Relying on the Supreme Court's decision in *Bivens*, these circuit courts implied a direct cause of action under the Constitution in order to provide a remedy for plaintiffs whose rights had been violated by municipal governments. In *Monell*, the Supreme Court partially reversed its previous holding in *Monroe*, and held that municipalities could be held liable under § 1983 for constitutional violations which resulted from an "official municipal policy." 436 U.S. at 690, 694, 98 S.Ct. at 2035, 2037 (*Monell* reaffirmed the portion of *Monroe* holding that municipalities could not be held liable for the actions of individual officials under a theory of *respondeat superior*. *Id.* at 691, 98 S.Ct. at 2036). In light of *Monell*, several circuits reversed their previous positions and held that plaintiffs could no longer bring a direct cause of action against a municipality under the Constitution and 28 U.S.C. § 1331; but rather § 1983 provided the exclusive remedy. *See Turpin v. Mailet*, 591 F.2d 426 (2d Cir. 1979); *Owen v. City of Independence*, 589 F.2d 335 (8th Cir.1978), *rev'd on other grounds*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), *reh'g denied*, 446 U.S. 993, 100 S.Ct. 2979, 64 L.Ed.2d 850 (1980); *Cale v. Covington*, 586 F.2d 311 (4th Cir. 1978); *Molina v. Richardson*, 578 F.2d 846 (9th Cir.1978), *cert. denied*, 439 U.S. 1048, 99 S.Ct. 724, 58 L.Ed.2d 707 (1978).

In *Turpin*, the Court of Appeals for the Second Circuit, sitting *en banc*, stated:

*Monell* held that § 1983 suits may be brought against municipalities under conditions essentially coextensive with those we imposed on the private right of action in *Turpin*. We therefore conclude

---

issue in the instant case and therefore are highly relevant to our analysis.

**5.** The inclusion of *Kostka v. Hogg* in the string citation quoted above is misplaced. In *Kostka*, the First Circuit acknowledged that § 1331 provides a *jurisdictional* basis for a constitutional claim against a municipality. 560 F.2d at 41 n. 5.

The court, however, expressly declined to recognize an implied cause of action under the fourteenth amendment, notwithstanding the lack of an alternative available remedy under § 1983. *Id.* at 44. Accordingly, the court affirmed the dismissal of the plaintiff's complaint against the municipality.

that—under the very rationale of our prior opinion—there is no place for a cause of action against a municipality directly under the 14th Amendment, because the plaintiff may proceed against the City of West Haven under § 1983. 591 F.2d at 427. In *Owen*, the Court of Appeals for the Eighth Circuit stated:

A post-*Monell* interpretation of § 1983 permits Owen to sue the City of Independence directly, and therefore, we find it unnecessary to rely on the *Bivens* doctrine as we did in our previous opinion. By enacting § 1983, Congress has provided an appropriate and exclusive remedy for constitutional violations committed by municipalities. Consequently, no reason exists to imply a direct cause of action under the Fourteenth Amendment.

589 F.2d at 337. In *Cale*, the Fourth Circuit stated: "[W]e are of [the] opinion there is no implied cause of action against the municipality under the Fourteenth Amendment, with jurisdiction under § 1331, for the acts of one of its employees." 586 F.2d at 317. The Fourth Circuit remanded the case with the instruction that Cale be allowed to proceed with his action under § 1983 only. 586 F.2d at 318.

In *Molina*, the Ninth Circuit refused to recognize an implied constitutional cause of action against a municipality even though § 1983 was *not* available as a remedy. In *Molina*, the plaintiff sought damages from the City of Los Angeles based on the alleged misconduct of one of its police officers. The court acknowledged that the city could be sued under § 1983, but also noted that it could not be held liable solely on the basis of *respondeat superior*. 578 F.2d at 847 (citing *Monell*). Finding that the plaintiff's claim against the city was based solely on a theory of *respondeat superior*, the Ninth Circuit upheld the dismissal of the plaintiff's claim. 578 F.2d at 848, 853. *See also Kostka v. Hogg, supra,* note 5.

The Second, Fourth, and Eighth Circuits have all held that municipalities are not subject to a direct cause of action under the Constitution and § 1331 where § 1983 is available as a remedy for constitutional violations. The First and Ninth Circuits have refused to recognize a direct action under the fourteenth amendment against a municipality notwithstanding the lack of an alternative remedy under § 1983.

In the instant case, plaintiff cites to three Sixth Circuit cases wherein we continued to allow direct constitutional claims against municipalities under § 1331 even after the Supreme Court's decision in *Monell*. See *Amen v. City of Dearborn*, 718 F.2d 789 (6th Cir.1983) (Amen II), *cert. denied*, 465 U.S. 1101, 104 S.Ct. 1596, 80 L.Ed.2d 127 (1984); *Jones v. City of Memphis*, 586 F.2d 622 (6th Cir.1978), *cert. denied*, 440 U.S. 914, 99 S.Ct. 1230, 59 L.Ed.2d 464 (1979); *Lenoir v. Porters Creek Watershed District*, 586 F.2d 1081 (6th Cir.1978).

A careful reading of these cases, however, reveals that this court never expressly considered whether it was still necessary to imply a direct constitutional claim under § 1331 in light of *Monell* which allowed plaintiff's to bring constitutional claims against municipalities under § 1983. Thus, as we noted in *Harris*, "This court has not specifically addressed the issue since *Monell*, with actions generally proceeding under both § 1983 and § 1331." 725 F.2d at 374, n. 3.[6]

In *Jones*, our discussion of *Monell* was essentially limited to the portion of that opinion reaffirming the principle that a municipality could not be held liable solely on the basis of *respondeat superior* for constitutional violations committed by municipal employees. 586 F.2d at 624 (citing *Monell*, 436 U.S. at 691, 98 S.Ct. at 2036). The limited scope of our analysis in *Jones* was emphasized by the following statement: "The *only* issue on this appeal is whether the doctrine of *respondeat superior* should be applied to actions against municipalities brought directly under the four-

---

**6.** Two years prior to our decision in *Harris*, Judge Merritt wrote: "[I]t is unclear after *Monell* whether the Supreme Court will approve this circuit's implication of a *Bivens*-type direct action under the Fourteenth Amendment...." *Hays v. Jefferson County*, 668 F.2d 869, 876 (6th Cir.1982) (Merritt, J., dissenting).

teenth amendment and § 1331." 586 F.2d at 624 (emphasis added). Analogizing to the Supreme Court's decision in *Monell,* the *Jones* court found that "[i]t would be incongruous to hold that the doctrine of *respondeat superior* can be invoked against a municipal corporation in an action under § 28 U.S.C. § 1331, when the doctrine has no application in an action under 42 U.S.C. § 1983." 586 F.2d at 625. Nowhere in the *Jones* opinion is there any discussion of whether § 1983 should or should not provide the exclusive remedy where it is available. Rather, the *Jones* court simply assumed that the plaintiff had stated a proper cause of action under the fourteenth amendment and § 1331, citing to a long line of pre-*Monell* cases.

In *Lenoir,* we allowed the plaintiff to bring direct constitutional claims pursuant to § 1331 against several local governmental units for flood damage caused by a waterway improvement project. 586 F.2d at 1093–96. Although *Lenoir* was decided shortly after the *Monell* decision was released, the *Lenoir* opinion does not make any references to that case. Therefore, it is obvious that the *Lenoir* court did not consider the potential impact of *Monell* on the availability of direct constitutional claims against municipalities.

The most recent of the post-*Monell* cases cited by plaintiff is *Amen v. City of Dearborn,* 718 F.2d 789 (6th Cir.1983) (*Amen II*). In *Amen II,* we reaffirmed our previous ruling in the same case by allowing the plaintiffs to bring a direct constitutional claim against the City of Dearborn based on the fourteenth amendment and § 1331. *See Amen v. City of Dearborn,* 532 F.2d 554 (6th Cir.1976) (*Amen I*). At the time *Amen I* was decided, municipalities were not subject to liability under § 1983. In *Amen II* we noted that *Monell* had been decided during the interim between *Amen I* and *Amen II.* However, having previously held that the plaintiffs had stated a claim under § 1331, we found it unnecessary to consider whether they could also bring a claim under § 1983. "The merits of the cross-appeal are largely irrelevant in light

of our holding that jurisdiction over the City exists under § 1331. Accordingly, we need not consider whether § 1343(3) would be an additional and proper jurisdictional bases [sic] for this action." *Amen II,* 718 F.2d at 794 (citations omitted). The *Amen II* court apparently did not consider the alternative analysis, i.e., the availability of § 1983 made it unnecessary to imply a direct cause of action under § 1331.

We find it significant that each of these cases—*Jones, Lenoir,* and *Amen II*—originated in district court cases decided prior to *Monell* when a direct constitutional claim pursuant to § 1331 was the only available cause of action against a local governmental unit. Since the Supreme Court's ruling in *Monell* did not affect the *result* of any of these cases, we simply followed the analytical approach established by the preceding district courts without considering whether it might be more appropriate to require plaintiffs to bring their constitutional claims under § 1983 now that it is available.

■ We conclude that the precedents cited above do not preclude us from holding that § 1983 provides the exclusive remedy for the constitutional claims brought by the plaintiff in this case against the city official. Plaintiff seeks to establish a separate independent constitutional claim under § 1331 based on the same facts and the same substantive constitutional provisions which gave rise to her claim under § 1983. The only justification which plaintiff provides for the recognition of a separate theory is that it would arguably allow her to take advantage of the six year Ohio statute of limitations which applies to actions arising under statutes. We find this argument to be disingenuous at best. First, even if we were to imply a direct cause of action, it would be a judicially created remedy, and hence, not based on the statute. Therefore, the Ohio statute of limitations dealing with actions arising under statutes would not be the most analogous. Plaintiff argues that her direct constitutional claims are based on 28 U.S.C. § 1331.[7] This stat-

---

**7.** We note also that plaintiff's complaint did not      specifically reference § 1331 as a jurisdictional

ute, however, merely provides the basis for jurisdiction, it does not create a cause of action in and of itself. *See Molina*, 578 F.2d at 848–49. Second, the recognition of a second direct constitutional claim with a different statute of limitations would run contrary to the intent of the Supreme Court's mandate in *Wilson* instructing the federal courts to adopt *one* statute of limitations in each state for all § 1983 claims. 471 U.S. at 275, 105 S.Ct. at 1946.

Accordingly, the district court's dismissal of plaintiff's suit is AFFIRMED.