Latonya JOHNSON, Plaintiff–Appellant,

v.

UNIVERSITY HOSPITAL OF CLEVELAND; Patricia Thompson, M.D.; George Gorodeski, M.D.; Jeffrey Segil, M.D.; John Doe, Professional Medical Group (1–3); John Doe, Medical Doctor and/or Medical Resident; Lake Hospital System, Inc., also known as Lake County East; Vernon Rutenbergs, M.D.; Lake Obstetrics

* The Hon. Herman J. Weber, United States District Judge for the Southern District of Ohio, sitting by designation.

and Gynecology, Inc.; Dale H. Fellow; Robert E. Aufuldish; Mildred M. Teuscher; Lake County Adult Detention Facility; Daniel Dunlap; Lake County Detention Officer John/Jane Does 1–5; Lake County Sheriff Deputies John/Jane Does 1–5; Lake County Detention Employees John/Jane Does 1–5; Frank J. Leonbruno; Emily Burke; Anne Takacs, R.N.; Carolyn Phelps, L.P.N.; Carla Baster; Robert Hungerford; Karen McKenna; Earl Tate, Sgt.; William Crosier, Defendants–Appellees.

No. 00–4061.

United States Court of Appeals,
Sixth Circuit.

Aug. 22, 2002.

Before SUHRHEINRICH, SILER and BATCHELDER, Circuit Judges.

BATCHELDER, Circuit Judge.

The plaintiff appeals the district court's grant of summary judgment in favor of the "medical defendants" on her individual claim of medical malpractice on statute of limitations grounds. We construe her brief on appeal as challenging as well the district court's grant of summary judgment in favor of the defendants on her individual 42 U.S.C. § 1983 claim. For the reasons that follow, we will affirm the district court's grant of summary judgment in favor of the defendants, but we reach this result with regard to the § 1983 claim for

a reason different from that relied on by the district court.

## PROCEDURAL HISTORY

On May 29, 1998, the plaintiff, LaTonya Johnson ("Johnson"), filed a complaint on behalf of herself and as guardian and next friend of her daughter, Tylor Johnson, in the Court of Common Pleas in Cuyahoga County, claiming: (1) medical malpractice during the birth of her daughter, naming as defendants Lake Hospital Systems, Inc., University Hospitals of Cleveland, and various doctors (known as the "medical defendants"); (2) a violation of 42 U.S.C. § 1983 for the deprivation of her right to medical attention as an incarcerated individual, naming as defendants the Lake County Sheriff and unidentified Lake County Detention Officers;[1] and (3) a violation of Ohio anti-dumping laws, which prohibit the transfer of any unstable patient for discriminatory reasons such as race, gender, situation, or lack of insurance, naming the medical defendants. Johnson subsequently filed three amended complaints, adding various defendants, including additional doctors as "medical defendants." The case was eventually removed to the United States District Court for the Northern District of Ohio.

The medical defendants filed three separate motions for partial summary judgment, each on the same grounds, which the district court consolidated; the court then granted partial summary judgment on the medical malpractice claim with regard to Johnson only and on the anti-dumping claim with regard to both Johnson and her daughter, finding both claims time barred. The defendants then filed four motions for summary judgment with regard to the remaining claims. The district court concluded that Johnson did not have standing to bring any claims on Tylor's behalf because she was not the "next friend" of Tylor, and, as a result, dismissed the medical malpractice and § 1983 claims that were brought on behalf of Tylor. The district court then examined Johnson's individual § 1983 claim, concluded that Johnson failed to establish that the actions of the Lake County defendants were the proximate cause of Tylor's health problems or her loss of custody, and granted the defendants' motion for summary judgment.

Johnson appeals the district court's grant of summary judgment on her personal medical malpractice claim and her personal § 1983 claim.

## STATEMENT OF FACTS

Johnson, an African–American mother of four children, was charged with several counts of attempted grand theft after she allowed a customer to use a stolen credit card while Johnson was working at Hills Department Store. She was ordered to appear for a preliminary hearing on March 15, 1995; upon her failure to attend, she was held in contempt of court, and an

---

1. The complaint and the plaintiff's appellate brief are ambiguous regarding whether Johnson brought this claim on behalf of herself and/or on behalf of her child. While Johnson now contends that she brought the claim on her own behalf, the defendants interpreted this § 1983 claim as being raised on behalf of Tylor. The district court correctly determined that Johnson did not have standing to file suit on behalf of her daughter because she is not the "next friend" of Tylor pursuant to FED. R. CIV. P. 17(c) and *Whitmore v. Arkan-* *sas*, 495 U.S. 149, 163–64, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990). Specifically, Johnson relinquished her parental rights to Tylor, she is not Tylor's legal representative, she does not know the identity of Tylor's current guardian, she is unaware of Tylor's medical status and has never seen the child, and she is not even certain if Tylor is still alive. Regardless of the ambiguity in her complaint and appellate brief, we find, as will be discussed, that Johnson's § 1983 claim is time barred.

arrest warrant was issued. On May 1, 1996, Johnson turned herself in and entered a plea of no-contest to the contempt charges, for which she received a sentence of thirty days in the Lake County Sheriff's jail. She was taken to the jail that day.

Johnson was thirty to thirty-two weeks pregnant on May 1, 1996, when she was taken into custody. She claims that during a fourteen-hour period, she repeatedly told Lake County officials that she was pregnant and that she was experiencing spotting, cramping, and abdominal pains. Johnson was eventually taken to Lake Hospital East Emergency Room for possible pre-term labor where it was discovered that the baby was being deprived of oxygen during each contraction.

Johnson was then transferred sixty miles via ambulance to University Hospital where she contends that doctors deliberately delayed the emergency delivery of Tylor. On May 2, 1996, Tylor was born via an emergency Cesarean section, in a severely depressed physical state with Apgars[2] of one and six at one and five minutes of life. Johnson says that she was told by her mother and a social worker that the baby should have been delivered sooner and that the baby had brain damage, specifically cerebral palsy. After the delivery, a court issued an order releasing Johnson from custody and ordering her sentence to time served.

Johnson did not see her baby immediately after she was born because of the baby's medical condition. In fact, Johnson has never seen Tylor, except for one picture. Following the delivery, a social worker told Johnson that she could not handle taking care of a sick child and encouraged her to give the baby up for adoption, which she apparently did, although she says that she does not recall signing any documents relinquishing her parental rights. Three months after her birth, Tylor was placed in the permanent custody of the Cuyahoga County Department of Children and Family Services, and Johnson officially lost her parental rights.

After Johnson's hospital discharge, she contacted the social worker and demanded her baby; the social worker told her again that the baby was ill with cerebral palsy and that Johnson would not be able to care for her. Johnson claims that she called the social worker at least two more times, but never received any response.

Johnson does not know Tylor's current medical condition, whether she suffers from cerebral palsy, where she is staying, whether she is still alive, or whether she has been adopted. She has never paid medical bills for Tylor, although she received bills in conjunction with Tylor's birth.

On July 19, 1996, Johnson retained an attorney, and on January 21, 1997, she filed a complaint against the Lake County Sheriffs Department, five John Doe Commissioners, five John Doe Officers, and five John Doe Physicians, different from the "medical defendants" named in the action at hand, alleging negligence and essentially a violation of § 1983. She voluntarily dismissed this complaint in its entirety on July 8, 1997. The present suit followed less than one year later.

## STANDARD OF REVIEW

We review a district court's grant of summary judgment de novo, using the same standard under Rule 56(c) used by the district court. *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir.1999) (en banc). Summary judgment is proper if "the

---

2. The Apgar score is a system of scoring an infant's physical condition immediately after birth in which heart rate, respiration, muscle tone, response to stimuli, and color are each rated zero, one, or two. The maximum total score is ten, and low scores require immediate attention. TABER'S CYCLOPEDIC MEDICAL DICTIONARY 115 (15th ed.1985).

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). To withstand summary judgment, the non-movant must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir.1990). A mere scintilla of evidence is insufficient; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## ANALYSIS

### A. Medical Malpractice

■ Johnson maintains that her medical malpractice claim is not barred by the statute of limitations because the birth of her child with brain damage was not the cognizable event that triggered the running of the limitations period. For the reasons that follow, we disagree.

A medical malpractice cause of action in Ohio must be commenced within one year after the cause of action has accrued. OHIO REV. CODE § 2305.11(B)(1). An action for "medical malpractice accrues and the statute of limitations commences to run (a) when the patient discovers or, in the exercise of reasonable care and diligence should have discovered, the resulting injury, or (b) when the physician-patient relationship for that condition terminates, whichever

occurs later." *Frysinger v. Leech*, 32 Ohio St.3d 38, 512 N.E.2d 337, 341 (Ohio 1987) (emphasis omitted). To ascertain the date of accrual, the district court must make the following three determinations: (1) "when the injured party became aware, or should have become aware, of the extent and seriousness of his condition, which, of course, may occur without the necessity of further medical consultation;" (2) "whether the injured party was aware, or should have been aware, that such condition was related to a specific professional medical service previously rendered him;" and (3) "whether such condition would put a reasonable person on notice of the need for further inquiry as to the cause of such condition." *Hershberger v. Akron City Hosp.*, 34 Ohio St.3d 1, 516 N.E.2d 204, 208 (Ohio 1987).

The Ohio Supreme Court has concluded that there must be "an occurrence of a 'cognizable event' which does or should lead the [reasonable person or reasonable] patient to believe that the condition of which the patient complains is related to a medical procedure, treatment or diagnosis previously rendered ... and where the cognizable event does or should place the patient on notice of the need to pursue his possible remedies." *Allenius v. Thomas*, 42 Ohio St.3d 131, 538 N.E.2d 93, 96 (Ohio 1989). A patient does not need to be aware of the full extent of the injury for there to be a cognizable event. Rather, "constructive knowledge of facts, rather than actual knowledge of their legal significance" is sufficient to trigger the statute of limitations. *Flowers v. Walker*, 63 Ohio St.3d 546, 589 N.E.2d 1284, 1287 (Ohio 1992) (emphasis omitted).

We conclude after viewing the facts in the light most favorable to Johnson that the district court properly found that a cognizable event occurred the day Tylor was born, May 2, 1996, because Johnson was informed immediately at least by her

mother and the social worker that Tylor suffered brain damage and possibly cerebral palsy. Johnson knew that there were complications with her pregnancy—she knew that the baby was being deprived of oxygen, which required the emergency Cesarean section, and that the baby should have been taken sooner.

A reasonable patient in Johnson's position would have known to investigate the actions of both the jail and medical personnel. The delays in her initial trip to the hospital, in her receipt of medical care, and in the delivery of her baby, as well as the emergency Cesarean, should have alerted her to the possibility of improper medical treatment, especially when she was not allowed to see Tylor because of her critical medical condition.

Because the statute of limitations began on the date of Tylor's birth, May 2, 1996, Johnson had until May 2, 1997, to commence an action against the defendants. She did not file the present suit until May 29, 1998, more than two years after Tylor's birth. Accordingly, the statute of limitations has run.

### B. 42 U.S.C. § 1983

While the district court addressed Johnson's 42 U.S.C. § 1983 claim by concluding that Johnson failed to establish that the actions of the Lake County officials were the proximate cause of Tylor's health problems or Johnson's loss of custody, we need not reach that aspect of the § 1983 claim. Rather, like her medical malpractice claim, Johnson's § 1983 claim is barred by the statute of limitations. In *LRL Prop. v. Portage Metro Hous. Auth.*, 55 F.3d 1097 (6th Cir.1995), we held that "the appropriate statute of limitations for 42 U.S.C. § 1983 civil rights actions arising in Ohio ... requires that actions ... be filed within two years after their accrual." *Id.* at 1105. Further, Ohio statutory law states that "[a]n action for bodily injury ... shall

be brought within two years after the cause thereof arose." OHIO REV. CODE § 2305.10.

Johnson's cause of action accrued on May 2, 1996. She had until May 2, 1998, to file her § 1983 action. Originally, Johnson filed a complaint against Lake County officials on January 21, 1997, within the limitations period. However, she voluntarily withdrew this complaint on July 8, 1997, before the limitations period expired. She did not file the present complaint until May 28, 1998, twenty-six days after the limitations period expired.

■ The Ohio savings statute, OHIO REV. CODE § 2305.19, does not prevent Johnson's § 1983 claim from being time-barred. The statute allows for the commencement of a new action within one year from the date of the failure of an original cause of action providing that four criteria have been met: "(1) the action must have been commenced or attempted to be commenced within the applicable period of limitations; (2) the failure of the plaintiff in the action was otherwise than upon the merits; (3) at the date of such failure, the time limit for commencing the action had expired; and (4) the plaintiff refiled the action within one year of such failure." *Harris v. City of Canton*, 725 F.2d 371, 375 (6th Cir.1984).

Johnson filed her original action within the limitations period, as required by the first prong, and she meets the second prong because her voluntary withdrawal of her claim constitutes failure "otherwise than upon the merits," as defined by the statute. *Frysinger*, 512 N.E.2d at 342. Johnson cannot meet the third requirement, however, because on the date that she voluntarily dismissed her first complaint, the time limit for commencing the action had not expired. The limitations period ran from May 2, 1996, until May 2, 1998. Johnson dismissed her complaint on July 8, 1997, when she still had approxi-

mately ten months left on her limitations period. Had she re-filed her suit before the end of the original limitations period, May 2, 1998, her claim would be timely. OHIO REV. CODE § 2305.19; *Griffin v. Am. Med. Sys., Inc.,* No. 95–4316, 1997 WL 6131, at *2 (6th Cir. Jan.7, 1997) (citing *Malatesta v. Sharon Twp. Trustees,* 87 Ohio App.3d 719, 622 N.E.2d 1163, 1166 (Ohio Ct.App.1993)). She did not do so, and as a result, the savings statute does not apply. Accordingly, we conclude that the district court was correct in dismissing Johnson's 42 U.S.C. § 1983 action, but that the dismissal should have been based upon the expiration of the limitations period.

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment in favor of the defendants.