**Hector A. NOLLA MORELL, et al, Plaintiffs,**

v.

**Jose L. RIEFKOHL, et al, Defendants.**

**Civ. 86-0296(PG).**

United States District Court,
D. Puerto Rico.

Dec. 5, 1986.

---

Frank Rodríguez García, Ponce, P.R., for plaintiffs.

Rafael García Rodón, Hato Rey, P.R., for defendants.

## OPINION AND ORDER

PEREZ–GIMENEZ, Chief Judge.

Plaintiff Héctor A. Nolla Morell filed a civil rights action alleging that defendants, officials of the Puerto Rico Aqueduct and Sewer Authority (PRASA),[1] deprived plaintiff under color of state law of his rights under the First and Fourteenth Amendments to the Constitution of the United States. Defendants are sued in their personal and official capacities. Plaintiff asserts that he was dismissed from his position of PRASA's Arecibo Operations Regional Director solely because of his political affiliation with the New Progressive Party.

The matter is before this Court on defendants' motion for summary judgment. In said motion, defendants raise two grounds why plaintiff's claim should be dismissed. They argue that the position of PRASA's Operations Regional Director is a position where political affiliation is an appropriate requirement for the effective performance of the position involved. Second, defendants argue that even if plaintiff's rights were infringed, they are entitled to the qualified immunity defense of public officials.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

---

1. These officials' wives and their conjugal partnerships are also sued. For brevity purposes these defendants will not be referred to in this opinion.

and that the moving party is entitled to judgment as a matter of law." Fed.R. Civ.P. § 56(c); *Celotex Corp. v. Catrett,* — U.S. ——, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Poller v. Columbia Broadcasting System,* 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962).

### Findings of Fact

1. Plaintiff Héctor A. Nolla Morell was appointed Arecibo Operations Regional Director on July 28, 1978. He is a member of the New Progressive Party.

2. On April 17, 1985, plaintiff received a letter from defendant José L. Riefkohl, Acting Executive Director of PRASA, advising plaintiff that effective April 24, 1985, he was being discharged from his position.

3. The general policies of PRASA are determined by the Governing Board, whose seven members are designated by the Governor of Puerto Rico. 22 L.P.R.A. § 143. Under the Governing Board there is an Executive Director and a Deputy Executive Director. PRASA is divided into four areas, each under an Area Director. The Area of Operations is divided in eight areas: San Juan, Guayama, Humacao, Ponce, Bayamón, Arecibo, Manati, Mayaguez. The Area of Operations is also divided in two sub-areas, each under a Deputy Operations Director, one for the east and one for the west. Command sifts down from the Executive Director to the Area of Operations Director to the Operations Supervisor and to the Operations Regional Area Director (plaintiff's position).

In their motion for summary judgment and their reply to plaintiff's opposition, defendants filed a series of documents, including a translation of plaintiff's alleged description, or OP-16, and a series of minutes reflecting alleged meetings with PRASA's Regional Directors. This Court, however, may not consider all of the documents submitted by defendants because they were not authenticated by an affidavit that met the requirements of Fed.R.Civ.P. 56(e). See, 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure,* § 2722,

pp. 58–60 (1983) (hereinafter Wright). Furthermore, with regards to the job description plaintiff points out that one of the two signors of the alleged job description was not an employee of PRASA the date the job description was signed. (See, plaintiff's declaration under oath).

Wherefore, based on plaintiff's declaration under oath we find that he had the following duties:

a. Supervises and administers the operation and maintenance of all urban and rural aqueduct and sewers systems in the region of Arecibo.

b. Replaces the Director in activities limited to obtaining information and rendering a report to the Executive Director through the Area Director of Operations.

c. Drafts and signs correspondence on behalf of the Authority in relation to simple matters such as property permits.

d. Resolves complaints submitted by unionized personnel and managerial personnel in accordance with the collective bargaining agreement and the agency's regulations.

e. May be designated as a member of the Grievances Committee, as a member of the Negotiating Committee or any other committee that may be established under the collective bargaining agreements whenever so designated by the Executive Director.

f. Handles visits from government agencies officers and resolves the problems presented.

g. Supervises the operations of the Region's warehouses.

h. Supervises the operations and maintenance of the fleet of vehicles and work equipment assigned to the Region. Any deficiency found by the Regional Director of Operations in the maintenance of the vehicles is reported to San Juan.

i. Prepares a preliminary operating budget for the Region, which is discussed with the Director of Operations and his administrative assistant. The latter officers prepare the final operating budget for the

Region and for all PRASA regions in Puerto Rico.

j. Controls the preparation for and execution of previously authorized extension and renovation projects to be constructed by the Area of Operations.

k. Periodically visits the different zones in his region to ascertain that they are operating in a correct manner.

l. Regularly visits the aqueducts and sewers systems in the region to observe the operations and take corrective measures, if necessary. The majority of the corrective or maintenance measures are taken care of at the region or zone level, however, major repairs are the responsibility of the maintenance or engineering section.

m. Visits the central offices when required to receive guidance or instructions from the Executive Director of the Area Director.

### Conclusions of Law

In *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), the Supreme Court held that public employees who allege were discharged because of their political affiliation state a claim or violation of their first and fourteenth amendment rights. The Court held, however, that officials in policymaking or confidential positions could be discharged because of their political beliefs. *See, Id.* at 375, 96 S.Ct. at 2690. Subsequently, in *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), the court departed from the policymaking and confidential labels espoused in *Elrod.* The *Branti* court framed the ultimate inquiry as "whether the hiring authority could demonstrate that party affiliation [was] an appropriate requirement for the effective performance of the public office involved." *Id.* If an employee is in a policymaking, confidential or spokesperson position is relevant to this inquiry but is not dispositive. Other factors to be considered include "the scope of discretion and responsibilities of the office", *Scheuer v. Rhodes,* 416 U.S. 232, 240, 94 S.Ct. 1683, 1688, 40 L.Ed.2d 90 (1974), and employment

decisions at the higher level which are essential to the effective implementation of important government policies. *De Abadia v. Izquierdo Mora,* 792 F.2d 1187, 1191 (1st Cir.1986).

The following factors have also been considered by the courts as indicia of policymaking: whether the position has responsibilities that are not well defined and are of broad scope, *Elrod v. Burns,* 427 U.S. at 368, 96 S.Ct. at 2687; whether the position allows the officer to act as an adviser or formulate plans for the implementation of broad goals, *Id.;* whether the position held by the individual authorizes, either directly or indirectly, meaningful input into government decisionmaking on issues where there is room for principled disagreement on goals or their implementation, *Nekolny v. Painter,* 653 F.2d 1164, 1170 (7th Cir.1981); and whether the position requires the employee to participate in high level staff meetings where internal problems and policies are discussed, *Shakman v. Democratic Organization of Cook County,* 722 F.2d 1307 (7th Cir.1983).

With regards to the confidentiality criteria, the courts have focused on whether the position involved entitled the occupant to have access to secret or sensitive information or close contact with the policymaker and the confidential communications that pertain to the decisionmaking process. *Meeks v. Grimes,* 779 F.2d 417, 420 (8th Cir.1985); *Soderbeck v. Burnett County,* 752 F.2d 285, 288 (8th Cir.1985).

The Court of Appeals for the First Circuit recently promulgated explicit guidelines which evaluate the appropriateness of a political affiliation requirement for a government office. *See, Jiménez-Fuentes v. Torres Gaztambide,* 807 F.2d 236 (1st Cir.1986). The court in *Jiménez-Fuentes,* imposed a threshold inquiry that looks at the objectives entailed in the public office. The Court must ask whether "the position involves government decisionmaking on issues where there is room for political disagreement on goals or their implementation." At 240. If the answer to this ques-

tion is found in the affirmative, then the Court must proceed to analyze the specific duties and responsibilites of the officer in question and "determine whether it resembles a policymaking, a privy to confidential information, a communicator, or some other office holder whose function is such that party affiliation is an equally appropriate requirement." At 242. If this answer is also in the affirmative, then political patronage is a valid prerequisite for the position.

We begin, then, with the threshold inquiry set forth in *Jiménez-Fuentes,*—a determination of the impact of partisan politics on the exercise of the governmental functions accorded the Regional Area Operations Director of PRASA.

■ Since PRASA's objective is to provide adequate drinking water and sanitary sewage service to *all* residents of Puerto Rico, 22 L.P.R.A. § 144, we believe that the agency is not involved in government decisionmaking on issues where there is room for political disagreement on goals or their implementation. It may be true that different executive directors of the agency bring different solutions to PRASA's problems, but we do not believe that party goals or programs affect such solutions. The same can be said of PRASA's regional directors. As shown by plaintiff's declaration under oath, plaintiff's duties do not involve government decisionmaking on issues where there is room for political disagreement on goals or their implementation. For example, one of plaintiff's duties involves the execution of the operation and maintenance of the aqueduct and sewer systems in the region of Arecibo. We find nothing political about this. Plaintiff is to perform his duty to all residents of the region regardless of their political affiliation. We find at this juncture that the threshold inquiry is not satisfied.

Nonetheless, even if PRASA was deemed a partisan agency, thus satisfying the threshold inquiry, this Court would still be compelled to deny defendants' motion for summary judgment because the admitted evidence does not meet the second inquiry of the *Jiménez-Fuentes* analysis.

Our second inquiry involves the inherent powers and privileges of the position of Regional Director. This means that the duties and functions actually performed by plaintiff are not alone determinative. We must consider all the authority and power ascribed to that office by the agency itself. *De Abadía v. Izquierdo Mora,* 792 F.2d at 1192.

Thus, if an officeholder performs fewer or less important functions than usually attend his position, he may still be exempt from the prohibition against political termination if his position inherently encompasses tasks that render his political affiliation an appropriate prerequisite for effective performance.

*Tomczsak v. City of Chicago,* 765 F.2d 633, 641 (7th Cir.1985).

The organizational structure shows that the office is actually a fifth-level position in the administrative hierarchy subordinate to the Operations Supervisor, Area of Operations Director, Executive Director, and, of course, the Board of Directors. Furthermore, plaintiff's responsibilities in PRASA are such that political affiliation is not a proper requirement for the effective performance of the office. First, plaintiff was not charged with devising PRASA's policy or with advising or formulating plans for the implementation of broad goals; he was merely responsible for overseeing the execution of the operation and maintenance of the aqueduct and sewer systems in the Region of Arecibo. *See, Elrod v. Burns, supra.* Second, the position held by plaintiff does not authorize plaintiff to have direct or indirect meaningful input into government decisionmaking; plaintiff merely visits the central offices to receive guidance or instructions from the Executive Director or the Area Director. *See, Nekolny v. Painter,* 653 F.2d at 1170 (7th Cir.1981). Third, although plaintiff drafts and signs correspondence on behalf of the authority, this is in relation to simple matters such as property permits. Fourth, with regards to personnel duties, plaintiff

merely resolves complaints in accordance with the collective bargaining agreement at the levels concerned. Furthermore, there is no evidence that plaintiff makes recommendations regarding recruitment, dismissals and promotions. Fifth, with regards to the confidentiality criteria, there is no evidence that plaintiff has access to secret or sensitive information.

■ Defendants also argue that even if plaintiff's rights were infringed they are entitled to the qualified immunity defense of public officials. This defense requires an objective review that looks to the state of the law at the time of the violation in the following two-step analysis:

1) whether the government official's conduct violated a constitutional right that was "clearly established" at the time; and if so,

2) whether the official reasonably should have known that his acts constituted such a violation. *De Abadia v. Izquierdo Mora, supra.*

■ In determining the existing state of the law under step one of this analysis a specific judicial articulation of a fundamental legal principle is unnecessary when basic constitutional rights are violated. *See, Blackburn v. Snow,* 771 F.2d 556, 570 (1st Cir.1985); *Román Meléndez v. Inclán,* 641 F.Supp. 998, 1001 (D.P.R.1986).

■ Furthermore, under step two of the Court's review, although a government official will not be "expected to anticipate subsequent legal developments," or know that "the law forbade conduct not previously identified as unlawful," *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2728, 73 L.Ed.2d 396 (1982), he will be held to a uniform level of presumptive knowledge of constitutional standards. *Floyd v. Farrell,* 765 F.2d 1, 4–5 (1st Cir.1985). Accordingly, the proper inquiry under the *Harlow* standard requires that the Court "make an objective analysis of the reasonableness of conduct in light of the facts actually known to the officer and not consider the individual officer's subjective assessment of those facts." *Id.* at p. 6.

■ At the present juncture of the case, the Court has not been put in the proper perspective by defendants to resolve their qualified immunity issue, and, therefore, the same is hereby denied. As we stated before, the documents filed by defendants were unaccompanied by affidavits or a certification attesting to their validity. Therefore, there is no evidence before us which defendants relied upon to determine whether they could dismiss plaintiff without violating his constitutional rights.[2]

Under Fed.R.Civ.P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The burden of establishing the non-existence of a genuine issue is on the party moving for summary judgment. *Taylor v. Hercules, Inc.,* 780 F.2d 171 (1st Cir.1986); *Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975). Any doubt as to the existence of a genuine issue of material fact will be resolved against the movant. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–159, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970).

■ Affidavits in support of a rule 56 motion are not required by the rule; they simply are permitted. The failure to introduce affidavits will not impede summary judgment if the prerequisites for granting the motion have been satisfied in some other manner. 10A Wright, § 2722. Affidavits are *ex parte* documents whose affiants are not subject to cross-examination and their demeanor cannot be evaluated. As a result, affidavits offered on a summary judgment motion are to be scrutinized carefully by courts to evaluate their probative value and to determine whether they

---

2. We note that in *Abadia, supra,* the job description was accompanied by a certification from the Sub-director of the Commonwealth's Personnel Office attesting to the validity of the job description.

meet the requirements prescribed in Rule 56(e). *Id.* This rule provides in part:

"Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

Fed.R.Civ.P. 56(e).

■ Exhibits that have been properly made a part of an affidavit are also considered by courts. In fact, Rule 56(e) requires that sworn or certified copies of all papers referred to in an affidavit must be attached to or served with that affidavit. This means that if written documents are relied upon they actually must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e), and the affiant must be a person through whom the exhibits could be admitted into evidence. 10A Wright § 2722; *Cummings v. Roberts,* 628 F.2d 1065 (8th Cir.1980); *Macklin v. Butler,* 553 F.2d 525 (7th Cir. 1977); *Ramsay v. Cooper,* 553 F.2d 237 (1st Cir.1977). A contrary rule would circumvent the authentication requirements established for trial under Fed.R.Evid. 901. As stated in *Finn v. Consolidated Rail Corp.,* 782 F.2d 13, 16 (1st Cir.1986), "material that would be *inadmissible at trial* cannot be considered on a motion for summary judgment because, if offered at trial, it would not serve to establish a genuine issue of material fact." (emphasis ours).

■ In the present case, the documents filed by defendants were unaccompanied by affidavits attesting to their validity, therefore, under Fed.R.Civ.P. 56(e) and Fed.R. Evid. 901 these documents are inadmissible. Consequently, there is no evidence before us which defendants relied upon to determine whether they could dismiss plaintiff without violating his constitutional rights. As a result, we deny the qualified immunity defense.

WHEREFORE, in view of the above, defendants' motion for summary judgment is hereby DENIED on both grounds.

IT IS SO ORDERED.