Karen Kay **VALERIO**, Plaintiff,

v.

Eric **DAHLBERG**, Robert Prigmore, the Ohio State Reformatory, and the Ohio Department of Rehabilitation and Correction, Defendants.

No. C2-85-2027.

United States District Court, S.D. Ohio, E.D.

Dec. 22, 1988.

On Motion to Reconsider March 31, 1989.

---

Alexander M. Spater of Spater, Gittes & Terzian, Columbus, Ohio, for plaintiff.

Kevin Shoemaker of Price, Berry & Shoemaker, Columbus, Ohio, for defendants.

## OPINION AND ORDER

GEORGE C. SMITH, District Judge.

This matter is before the Court on defendants' limited motion for summary judg-

ment. For the reasons set forth below the motion is granted in part and denied in part, and certain causes of action are dismissed by the Court.

## I. BACKGROUND

### A. Parties

The plaintiff, Karen Valerio, alleges various causes of action based upon employment discrimination by defendants Eric Dahlberg, Robert Prigmore, the Ohio State Reformatory, and the Ohio Department of Rehabilitation and Correction. Valerio was employed as a technical typist beginning in 1972. Dahlberg is the Superintendent of the Reformatory, a prison for men and part of the defendant State department. Prigmore was a guard and supervisor of plaintiff.

### B. Allegations

Valerio claims that Prigmore sexually harassed her by unwanted touching and sexual solicitation on a continuing basis beginning in 1975 and ending shortly before her employment terminated in 1984, that numerous complaints to other supervisory personnel failed to eliminate the harassment, and that she was discharged by Dahlberg and the State defendants both because of her complaints of sexual harassment and because of her unwillingness to continue being harassed. She maintains that as a result of the defendants' intentional and reckless conduct, she has suffered emotional and psychological injury and loss of her job and the back pay attendant thereto.

Plaintiff asserts three federal causes of action and three pendent state claims. The federal claims include alleged violations of her rights under 42 U.S.C. § 1983 (acts under color of law), 42 U.S.C. § 2000e et seq. (Title VII employment discrimination), and a direct cause of action under the fourteenth Amendment (denial of equal protection); the state-law causes of action are for invasion of privacy, intentional infliction of emotional distress, and assault and battery. In addition to reinstatement and back pay, plaintiff seeks compensatory and punitive damages, costs and an award of attorney fees.

### C. Defenses

In addition to a denial of the operative factual allegations, the defendants asserted that there is no claim upon which relief can be granted, that plaintiff was permitted to resign in order to avoid disciplinary discharge, (see part VII–B, *infra*, for additional facts), that no damages may be awarded for violation of 42 U.S.C. §§ 1983 and 2000e or the Fourteenth Amendment, and that plaintiff's claims are barred by sovereign immunity, statute of limitations, collateral estoppel and res judicata.

### D. Prior Decision

Approximately one year ago the Court, per James L. Graham, United States District Judge, granted certain portions of defendants' motion to dismiss, namely all claims for compensatory damages against the State entities as well as against defendants Dahlberg and Prigmore *in their official capacities*, and claims for compensatory and punitive damages under 42 U.S.C. § 2000e against Dahlberg and Prigmore. This left pending the claims for (1) compensatory and punitive damages against Dahlberg and Prigmore under 42 U.S.C. § 1983, (2) reinstatement and back pay against all defendants under 42 U.S.C. § 2000e, (3) compensatory and punitive damages for the Fourteenth Amendment cause of action against Dahlberg and Prigmore, (4) compensatory and punitive damages for the state law privacy action against Dahlberg and Prigmore, (5) compensatory and punitive damages for the state law emotional distress action against Dahlberg and Prigmore and (6) compensatory and punitive damages for the assault and battery action against Dahlberg and Prigmore.

## II. SUMMARY

The defendants' pending motion for summary judgment is not a general motion that would require plaintiff to respond to all of the elements of the causes of action set forth in the complaint. Rather their motion is limited to four grounds: (1) the statute of limitations had run on the assault and battery cause of action; (2) the

plaintiff's voluntary resignation precludes reinstatement and back pay; (3) the plaintiff deliberately bypassed an effective complaint procedure; and (4) defendant Dahlberg is entitled to good faith immunity.

The Court grants the defendants' motion with regard to the statute of limitations preclusion of the assault and battery pendent state claim (see Part IV, *infra*). In addition, the Court, on its own, dismisses the federal civil rights action under 42 U.S.C. § 1983 against all defendants because it is time barred (see Part V, *infra*). Moreover, the Court, on its own, dismisses the claim arising directly under the Fourteenth Amendment (see Part VI, *infra*). However, the Court denies the defendants' motion with regard to the purported voluntary resignation (see Part VII, *infra*), bypassing complaint procedures (see Part VIII *infra*), and good faith immunity for defendant Dahlberg (see Part IX *infra*).

### III. EVIDENTIARY STANDARDS

In recent years, the Supreme Court has altered the standards which courts should apply in deciding motions for summary judgment under Rule 56(c). *See, Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) and *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), both decided on the same day.

In *Anderson,* the Supreme Court said that summary judgment should be granted "if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law." *Anderson, supra,* 477 U.S. at 250, 106 S.Ct. at 2511. The "genuine issue" standard to be applied in summary judgment cases has been merged with the "reasonable jury" standard that guides Courts in considering motions for directed verdicts, namely "the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. If reasonable minds could differ as to the import of the evidence, however, a verdict should not be directed." *Id.* at 250–51, 106 S.Ct. at 2511 (citations omitted). But, the judge "is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249, 106 S.Ct. at 2511, or what has been referred to as "the threshold inquiry of determining whether there is the need for a trial ..." *Id.* at 250, 106 S.Ct. at 2511. In *Celotex Corp. v. Catrett, supra,* the Supreme Court made it clear that summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.,* 477 U.S. at 322, 106 S.Ct. at 2552.

The instant case is before the Court on complaint, answer, request for admissions (containing specific admissions and denials), documents, and two affidavits submitted by the defendants, as a backdrop for the Court to rule upon the limited motion for summary judgment.

In their Reply Brief, the defendants maintain that the plaintiff has failed to offer any evidence in opposition to their Motion for Summary Judgment and Memorandum in Support because: (1) the unsworn complaint is not evidence; (2) plaintiffs supplied no affidavits or other evidence; and (3) a copy of the findings of a state administrative law judge as submitted by plaintiff, could not be considered by the Court as it was not authenticated.

#### A. Unsworn Complaint

That the unsworn complaint is not evidence especially for purposes of a motion for summary judgment, is apparent from Rule 56(e) which provides that "a party may not rest upon the mere allegations or denials of his pleading ..." Thus, it is clear that, to the extent a movant for summary judgment engages a purported set of facts and demonstrates that they involve no *genuine* issues of material fact, the mere language of a complaint will not suffice to join the issue, *Celotex, supra,* at 324–25, 106 S.Ct. at 2553–54, absent evidence of same from some other source, which depends upon determination of the Court re (B) and (C) *infra.*

## B. Affidavits

Defendants allege that the plaintiff offered no affidavit or other evidence to respond to the issues raised in the motion for summary judgment. As the Supreme Court has made clear, Rule 56(c) refers to "affidavits, if any," but does not require same. *Celotex, supra,* at 322–323, 106 S.Ct. at 2552–2553. And, it "does not require the nonmoving party to depose her own witnesses." *Id.* at 324, 106 S.Ct. at 2553. Still, there must be some evidentiary material. *Id.* In a sense it is true that the plaintiff offered no affidavit, but she did execute one that was offered by the defendants, namely that which is part of her reply to the Request for Admissions. Moreover, there are some aspects of defendants' own affidavits and documents that can be considered by the Court for they show some lack of certainty, some conduct (or absence thereof) or motivation of defendants. The plaintiff's specific denials, under oath, join certain issues; their role in establishing *genuine* issues of *material* fact is discussed in Parts VII–VIII below. Thus, rather than no evidence, there is some evidence, in addition to that discussed in C *infra,* upon which the Court can make a judgment of sufficiency.

## C. Documents

■ Defendants suggest that a copy of the State of Ohio Unemployment Compensation Board of Review Referee's decision (as affirmed by the Board and submitted by plaintiff as part of her Memorandum Contra the Motion for Summary Judgment) should not be considered by the Court because it is not a certified copy, although the defendants do not question its authenticity. The defendants cite the cases of *Nolla Morell v. Riefkohl,* 651 F.Supp. 134 (D.Puerto Rico, 1986) and *Warner v. Replinger,* 397 F.Supp. 350 (D.R.I., 1975) in support of the purported need for authentication. Neither of these cases involve authenticating a decision of a state administrative agency. In *Warner* the document was an ocean survey map, *Id.* at 359–60. In *Nolla Morell, supra,* at 136, the documents were a translation of a description of a party and the minutes of a series of small meetings, both of which had to be authenticated, said that court, relying upon Rule 56(e) and upon 10A Wright, Miller & Kane, *Federal Practice and Procedure,* § 2722, at 58–60 (1983). However, more specific and most relevant as to copies of administrative law decisions in cases involving the same parties and some issues related to the case at bar is the next section of Wright, Miller and Kane. It notes that "the court may take judicial notice of other cases involving the same subject matter or presenting issues of a related nature between the parties even though the other cases would not be considered binding on the parties by virtue of either res judicata or collateral estoppel." *Id.,* § 2723 at 67, text accompanying notes 17 and 18 (footnotes and case citations omitted). Moreover, the Supreme Court has made it very clear that "[w]e do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial." *Celotex, supra,* 477 U.S. at 324, 106 S.Ct. at 2553. Accordingly, the Court observes that there is no dispute as to the authenticity of the Referee's decision and takes judicial notice thereof, pursuant to Rule 201 of the Federal Rules of Evidence, even though the Court does not rely upon the conclusions therein for purposes of res judicata or collateral estoppel.

## IV. ASSAULT AND BATTERY

The Court notes that in their amended answer, defendants assert that "Plaintiff's claims are barred by the applicable statute of limitations." Amended Answer, ¶ 22.

Subsequently, in their motion for summary judgment, defendants address themselves to the assault and battery claim as time-bared. Motion, at 1; Memorandum in Support, at 3, 23–24. The alleged assaults and batteries, asserted as a pendent state claim occurred between 1975 and April 1984. Complaint, ¶ 7 and 16. The complaint was filed on December 30, 1985. The applicable Ohio statutes of limitations, Ohio Revised Code § 2305.11 (and its successor § 2305.111) provide one year limitations on assault and battery, and the period described is well over the one year limit. Even the plaintiff concedes that "defen-

dants appear to be correct" on this matter. Memorandum Contra, at 11. Accordingly, the Court grants the defendants' motion for summary judgment on the pendent state assault and battery claims as to all defendants.

## V. CLAIMS UNDER 42 U.S.C. § 1983

While the defendants do not appear to renew their general statute of limitations defense in their motion for summary judgment, they have preserved it by asserting it in their amended answer, at ¶ 22. The Court notes that the United States Court of Appeals for the Sixth Circuit has held that as a matter of law, the one year assault and battery statute of limitations also applies to civil rights actions under 42 U.S.C. § 1983. *Thomas v. Shipka*, 818 F.2d 496, 498 (6th Cir.1987), following a similar holding in *Mulligan v. Hazard*, 777 F.2d 340 (6th Cir.1985), *cert. denied* 476 U.S. 1174, 106 S.Ct. 2902, 90 L.Ed.2d 988 (1986). Furthermore, the Circuit has made it clear that its § 1983 rulings have retroactive application. *Thomas v. Shipka*, on rehearing, 829 F.2d 570 (6th Cir.1987). Accordingly, the Court dismisses all claims arising under 42 U.S.C. § 1983 against all defendants.

## VI. FOURTEENTH AMENDMENT CLAIMS

*Thomas v. Shipka I* also establishes that this Circuit does not recognize direct constitutional claims because 42 U.S.C. § 1983 "is the exclusive remedy for the alleged constitutional violations." 818 F.2d at 499. Therefore, the Court concludes as a matter of law that the Fourteenth Amendment claim in the instant case was subsumed under the time-barred 42 U.S.C. § 1983 claim. As it does not state a claim upon which relief can be granted, (Amended Answer, ¶ 18), the Fourteenth Amendment cause of action is dismissed against all defendants.

## VII. RESIGNATION VERSUS DISCHARGE

The defendants claim that they are entitled to summary judgment on the plaintiff's remaining federal claim—for reinstatement and back pay under Title VII—because the plaintiff voluntarily resigned from employment. They urge upon the Court that a determination to that effect by the State Personnel Board of Review (as affirmed by the Court of Common Pleas of Richland County, Ohio) should collaterally estop the plaintiff from asserting that she did not resign or that she was dismissed for anything other than just cause.

### A. Additional Facts

The background for this aspect of the defense is that the plaintiff—who maintained a close personal relationship with, and was the mother of the child of, a man who was not then but subsequently became an inmate at the reformatory—not only did not report this prior relationship to her superiors, but that subsequently she also concealed her identity while attempting to visit him at another prison to which he had been moved. On that visit, she said she was the sister-in-law of the inmate and, when asked to produce identification, she did not do so and withdrew from the attempted visit (Plaintiff maintains she is the wife of the inmate). Following the incident, which apparently followed plaintiff's complaint(s) about defendant Prigmore's sexual solicitations and verbal harassment, Prigmore and Deputy Superintendent Norman Hills inquired into the attempted visit under false pretenses. Three days later she received notification that a "disciplinary conference" would be held a few days later. There is nothing in the record suggesting any other unsatisfactory work performance. She was not represented by counsel at the conference, during which she ultimately acknowledged the foregoing incident and was told by defendant Dahlberg that she was "untrustworthy and a liar," that "he could remove her or she could resign," and that there were advantages to her if she resigned because a removal would involve adverse notations in her record. Moments later she was presented with a resignation form which she signed. Findings of State Personnel Board of Review Administrative Law Judge, at 3–4.

### B. Administrative Hearings and Appeals

Following her departure, the plaintiff pursued dual state administrative remedies—through Ohio's Unemployment Compensation Board of Review and Personnel Board of Review—as well as filing a charge with the U.S. Equal Employment Opportunity Commission, which issued a right-to-sue letter.

On July 10, 1984 the Administrator of the Ohio Bureau of Employment Services found, and on appeal on August 16, 1984, the Unemployment Compensation Board of Review referee upheld, that Valerio was "discharged without just cause in connection with work" after the defendants here "presented no evidence to show that claimant was guilty of any willful misconduct or negligence with regard to her work." Decision of the Referee for the Unemployment Compensation Board of Review, at 2. Further appeal was rejected by the full Board of Review panel, and no appeal was taken to the Common Pleas Court.

After the Unemployment Compensation Administrator's finding but before the affirmation thereof, the plaintiff's appeal of her purported resignation was heard by a State Personnel Board of Review Administrative Law Judge. In his recommendation to the State Personnel Board of Review he had before him, but regarded as irrelevant, the Unemployment Administrator's findings, and he found that Valerio's "will was not overborne" by Dahlberg and that she had resigned, and recommended that her appeal be dismissed. The full Personnel Board of Review accepted that recommendation and dismissed the appeal. An appeal to the Richland County Court of Common Pleas resulted in an affirmation (without a *de novo* hearing and independent finding of facts) of the administrative finding, holding that Valerio "voluntarily resigned" albeit "with some coersion (sic)." *Valerio v. Ohio State Reformatory,* Case No. 84–565–14 (Richland County Court of Common Pleas, January 16, 1985). No further appeal was taken.

### C. Collateral Estoppel And Res Judicata

■ Defendants claim that the state Personnel Board of Review finding of voluntary resignation, as affirmed by the Richland County Court, should be used to preclude the plaintiff from relitigating the issue of the voluntariness of the dismissal, i.e. that this Court should bar it on grounds of the doctrine of collateral estoppel. Res Judicata is also asserted. Plaintiffs urge the Court to reject that proposition because the issue of the alleged retaliatory animus (as reprisal for bringing a sex discrimination complaint) was not litigated in the Personnel Board and County Court proceedings, or in the alternative that if collateral estoppel or res judicata are to be applied, that the Unemployment Board referee's findings (which were earlier in time than the Personnel Board's Administrative judge) should preclude defendants from relitigating the "discharge" issue.

The U.S. Court of Appeals for this Circuit has provided guidance on the issue of whether state court administrative proceedings related to dismissal from employment and judicial affirmation thereof, should be a basis to preclude a plaintiff in a federal race and sex discrimination case from litigating whether her dismissal was unlawful under Title VII. In *Cooper v. City of North Olmsted,* 795 F.2d 1265 (6th Cir. 1986), the Ohio Bureau of Employment Services had held, and a Common Pleas Court affirmed, that the plaintiff had been dismissed for just cause. The Sixth Circuit held that collateral estoppel would not apply in the Title VII case in federal court because the prior record was "devoid of any consideration of race or sex discrimination," *Id.* at 1269, and state courts would not preclude discrimination claims. *Id.* at 1270. The Circuit noted that:

> The record on appeal, as indicated above, contains no indication that any charges of race and sex discrimination were directly presented or considered in the state proceedings. Therefore, the record, when considered as a whole, fails to establish that the issues of race and sex discrimination were actually and directly at issue in the prior proceedings, or that they were essential to the judgment of the state court.

**1038**

*Id.* at 1269 n. 1. The judges also observed that the defendant "must prove that the issues of race and sex discrimination were actually and directly at issue in the prior state proceedings, and that they were essential to the state judgment against" the defendant. *Id.* at 1268. In the case at bar it is obvious that the animus, if there was any, of the employer—that is, whether he was motivated to promote the resignation or to discharge the plaintiff by a desire to act against her because of her gender or to retaliate against her because of her allegations of sexual harassment—plays an important role in the determination of whether the plaintiff resigned, was forced to resign, or was discharged, and the reasons therefore. And, that issue was not litigated in either state proceeding. Thus, the Court holds that its inquiry is not precluded by either the conclusion of the State Personnel Board of Review (at 5) (subsequently affirmed by the Court of Common Pleas) that plaintiff "chose to resign to avoid removal" or by the earlier decision of the Unemployment Compensation Board of Review (at 2) "the employer was responsible for severing the employer-employee relationship" and that plaintiff was "discharged ... without just cause in connection with work."

### D. Conflict of Evidence

■ The burden is upon the defendants to show that there is no *genuine* issue of *material* fact as to whether the plaintiff voluntarily resigned, was forced to resign or constructively discharged. It is unquestioned that she signed a resignation (Admissions, ¶ 16), but it is the circumstances surrounding the signing that are at issue. The evidence before the Court consists of the findings and inferences therefrom from two administrative processes (one offered by each side), affidavits by defendant Dahlberg and Mr. Hills, his deputy, and the sworn responses to the Request for Admissions. The defendants have not deposed the plaintiff, nor has the plaintiff deposed any of the defendants.

The Dahlberg affidavit (¶ 4) says only that the plaintiff "voluntarily resigned." The Hills affidavit (¶ 8) says plaintiff "re-

signed her position" after giving a sketchy, two sentence background suggesting imminent disciplinary proceedings (¶¶ 6 and 7). The plaintiff has responded to a Request for Admissions with a specific denial that she "voluntarily resigned" and that statement is under oath. Standing on their own, those statements suggest a genuine issue of material fact, and the fleshing out that might come from the two different administrative proceedings (and appeals) only heightens that conflict. Accordingly, the "voluntary resignation" branch of the defendants' motion for summary judgment on the Title VII claim for reinstatement and back pay is denied.

### VIII. COMPLAINT PROCEDURE

■ Defendants also seek summary judgment on grounds that the plaintiff "bypassed an effective complaint procedure" and therefore "cannot sue for damages for sexual harassment due to hostile work environment." The defendants properly note that the Supreme Court in *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) has distinguished between the *quid pro quo* and the hostile working environment kinds of harassment *Id.* at 64–67, 106 S.Ct. at 2404–2406. The former involves the granting or withholding of employment or its benefits in exchange for sexual services. See for example, C. Mackinnon, *Sexual Harassment of Working Women* 32 (1979). The latter has been expressed as "verbal physical conduct of a sexual nature ... when ... such conduct has the purpose of effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." U.S. Equal Employment Opportunity Commission Guidelines on Discrimination because of Sex, 29 C.F.R. § 1604.11 (1985). Reading ¶ 7 of the plaintiff's complaint in the case at bar *in pari materia* with ¶¶ 8 through 12, it appears that plaintiff has alleged both *quid pro quo* and hostile work environment. Defendants motion focuses only on the latter, and asserting that "Plaintiff nowhere suggests that she exchanged any sexual favors

for any benefit or to avoid a possible detriment. As a result Plaintiff's action must be premised upon sexual harassment by virtue of a hostile working environment rather than *quid pro quo* sexual harassment." Memorandum in Support of Motion for Summary Judgment, at 9. The defendants misunderstand that sexual favors need not actually be exchanged to have *quid pro quo* harassment, they need only be proposed with a threatened or implied detriment was imposed (i.e. that the plaintiff lost her job) in addition to the hostile work environment.

■ But, turning to defendants' claim on the hostile environment position of the allegation, they maintain that summary judgment is proper because the plaintiff deliberately bypassed an effective complaint procedure.

The Supreme Court has held that a Court of Appeals "erred in concluding that employers are always automatically liable for sexual harassment by their supervisors." *Meritor Savings Bank, supra,* at 72, 106 S.Ct. at 2408. On the other hand, the Court also said that "absence of notice to an employer does not necessarily insulate that employer from liability." *Id.* In fact, the Supreme Court specifically *rejected* the "view that the mere existence of a grievance procedure and a policy against discrimination, coupled with [the complainant's] failure to invoke that procedure, must insulate [the employer] from liability." *Id.* The defendants urge upon the Court a portion of a concurring opinion, which is not inconsistent with the opinion of the Court, namely: "Where a complainant without good reason bypassed an internal complaint procedure she knew to be effective, a court may be reluctant to find constructive termination and thus to award reinstatement or back pay." *Id.* at 78, 106 S.Ct. at 2411 (Justice Marshall, writing for himself and Justice Brennan, Blackmun, and Stevens).

Both the majority opinion (under a liability theory) and the concurring opinion (under a remedies theory) make it evident that what is key is whether a complainant has deliberately bypassed a procedure that she would know was effective. This, of course, is a factual matter, and whether summary judgment can be granted turns upon whether there is a genuine issue of material fact. It is unchallenged that there is a set of administrative policies designed to deal with issues of discrimination in Ohio agencies, and that the policies direct each agency to have a procedure indicating how that would be implemented in that agency, Ohio Administrative Code, Chapter 123:1–49, Equal Employment Opportunity in State Government. A copy has been supplied to the Court together with defendant Dahlberg's affidavit of general compliance by the Reformatory, but Dahlberg's statements regarding the plaintiff's complaint(s), and the processing thereof, about harassment by Prigmore seem to be derivative from his deputy, Mr. Hills (e.g., Dahlberg's hearsay statement that "Mr. Hills informed me that...." Dahlberg Affidavit, ¶ 7). Therefore, the Court turns to Hill's own affidavit in which he says the plaintiff made a complaint to him but admits he is unsure of the date of the complaint, and states that he told her to put it in writing and that she did not. (Hills' Affidavit, ¶¶ 2, 3, 4 and 5). And, in her response to the Request for Admissions, plaintiff acknowledges that she never filed a written complaint. (Admissions, ¶ 24). Nevertheless, the plaintiff specifically denies under oath that she had been apprised of any such procedure by anyone, including Mr. Hills and the defendants. (Admissions, ¶ 25). No further evidence was offered by defendants, not even a statement that the Reformatory had promulgated a series of guidelines which it circulated to all employees. This means that there is a genuine issue of material fact as to whether the plaintiff knew or should have known what procedures the plaintiff should follow, including whether the Corrections Department had published, circulated, and implemented guidelines to fulfill its responsibilities under the Administrative Code, especially § 123–1–49–08(a). Accordingly, the Court denies this branch of the Motion for Summary Judgment, but cautions that it views the issue of the availability of, and resort to, administrative processes as rele-

vant in terms of liability and remedies, as the Supreme Court has directed in *Meritor Savings Bank, supra.*

## IX. IMMUNITY

Defendant Dahlberg seeks summary judgment in his favor on the grounds that he is entitled to "good faith immunity" since the events herein occured before *Meritor Savings Bank, supra,* was decided and, even with that decision, Dahlberg says employer liability in a case such as at bar is an open question. Dahlberg asserts that the "Plaintiff's sole complaint" about him is that he failed to resolve her charge against Prigmore, and that more of the defendants could take action because she did not file a written complaint.

As the Court has noted in Part VIII, *supra,* there remains to be decided certain factual issues surrounding the communication and knowledge of complaint procedures. But, setting that issue aside, the plaintiff also alleges that Dahlberg's role in plaintiff's departure was not merely passive but retaliatory because of her complaints about sexual harassment.

▆ While it is true, as Dahlberg contends, that public officials may be "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), it is too late in the day for a public employer not to recognize a duty to take disciplinary action to correct conditions of sexual harassment. That does not presume the existence of such conditions in the case at bar, but the Supreme Court in *Meritor Savings Bank, supra,* held *retroactively* that the defendant bank could be held liable depending upon the factual premises underlying the existence, communication, and accessibility of a grievance procedure for sexual harassment claims. The duty effectively to provide and communicate such a process is and has been very clear. Not only have the U.S. Equal Employment Opportunities Commission Guidelines, 29 C.F.R. § 1604.11, been

in effect since the beginning of the decade, but several Courts of Appeals at the time of the acts or omissions alleged herein already had held that liability may be imputed to the employer. *Craig v. Y & Y Snacks,* 721 F.2d 77, 80–81 (3d Cir.1983), *Miller v. Bank of America,* 600 F.2d 211, 213 (9th Cir.1979), *Henson v. Dundee,* 682 F.2d 897, 910 (11th Cir.1982) *Barnes v. Costle,* 561 F.2d 983, 993 (D.C.Cir.1977). Moreover, Ohio's own administrative regulations required each agency to adopt and effectively communicate its own procedures, thus creating a duty upon the defendant Dahlberg. Ohio Administrative Code § 123: 1–49–08. None of this presumes the existence of any failure on Dahlberg's part in the case at bar, and he may well prevail if it is established that the plaintiff knew of and failed to resort to an effective process and that Dahlberg did not engage in retaliatory conduct. But, as the matter is before the Court in its present posture, Dahlberg is not now entitled to summary judgment on the basis of good faith immunity as a matter of law.

## X. REMAINING CAUSES OF ACTION

### A. Federal Claim

The Court, herein and by previous action, has dismissed all claims against all defendants arising under 42 U.S.C. § 1983 and under the fourteenth Amendment. The remaining federal claim is for a claimed violation of 42 U.S.C. § 2000e—and that claim is limited to the remedies of reinstatement and back pay. In addition to the underlying factual issues, the Court will carefully scrutinize the evidence related to the complaint procedure and circumstances of departure.

### B. Pendent State Claims

▆ The Court has dismissed the assault and battery claim arising under state law. What remains are claims for compensatory and punitive damages against defendants Prigmore and Dahlberg (but not against the State) for invasion of privacy and for intentional infliction of emotional distress. No challenge has been made with regard to these claims, and the Court notes that,

along with the Title VII claim, it has jurisdiction. *See,* for example, *Phillips v. Smalley Maintenance Services, Inc.,* 711 F.2d 1524, 1531 (11th Cir.1983) (in a Title VII sex discrimination case, a pendent state claim for violation of privacy resulting in mental suffering was properly considered), applying *United Mine Workers v. Gibbs,* 383 U.S. 715, 725–26, 86 S.Ct. 1130, 1138–39, 16 L.Ed.2d 218 (1966).

With the dismissal of the assault and battery cause of action, what remains of the state claims are torts that essentially involve words and their impact. The Court cautions that, even though an employee might be especially susceptible to emotional distress arising from the captive audience nature of an employment relationship, the language and conduct of co-workers and supervisors must be very extreme to sustain the cause of action. Wolman, *Verbal Sexual Harassment on the Job as Intentional Infliction of Emotional Distress,* 17 Cap.U.L.Rev. 245, 266–69 (1988); Givelber, *The Right to Minimum Social Decency and the Limits of Even-handedness: Intentional Infliction of Emotional Distress by Outrageous Conduct,* 82 Colum.L.Rev. 42, 52–53, 66 (1982). Clearly, "the law does not regard the intent to inflict emotional distress as one which should be given much solicitude," *Hustler Magazine v. Falwell,* 485 U.S. 46, 108 S.Ct. 876, 880, 99 L.Ed.2d 41 (1988), and workers are not required to exhibit "good-natured tolerance" of verbal sexual harassment. *Bundy v. Jackson,* 641 F.2d 934, 946 (D.C. Cir.1981). However, in order to recover under the common law tort of intentional infliction of emotional distress, the plaintiff must bear the burden of demonstrating that the words and conduct rise above the level of "mere insults" and are "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Restatement (Second) of Torts § 46, comments e and d. And, this comports with the Sixth Circuit's Title VII—related application of the standards for "intimidating, hostile, or offensive working environment that affected serious-

ly ... psychological well-being." *Rabidue v. Osceola Refining Co.,* 805 F.2d 611, 622 (6th Cir.1986).

## XI. CONCLUSION

Accordingly, the Court hereby dismisses all causes of action arising under the Fourteenth Amendment and under 42 U.S.C. § 1983. The Court denies defendants' limited motion for summary judgment on the reinstatement and back pay claims arising under 42 U.S.C. § 2000e. The Court grants defendants' motion for summary judgment on the pendent state assault and battery claim.

IT IS SO ORDERED.

## ON MOTION TO RECONSIDER

■ This matter is before the Court on plaintiff's motion to reconsider its order dismissing the cause of action under 42 U.S.C. § 1983. In Part V of its Opinion and Order of December 22, 1988, the Court dismissed the § 1983 claim because it was time-barred under the then prevailing standard of the United States Court of Appeals for the Sixth Circuit, *citing Thomas v. Shipka,* 818 F.2d 496, 498 (6th Cir.1987), on rehearing, 829 F.2d 570 (6th Cir.1987) and *Mulligan v. Hazard,* 777 F.2d 340 (6th Cir.1985), *cert. denied,* 476 U.S. 1174, 106 S.Ct. 2902, 90 L.Ed.2d 988 (1986). The Circuit, in applying *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), had held that § 1983 actions were most analogous to assault, battery, defamation, malicious prosecution, and false imprisonment-type torts for which Ohio prescribes a one year statute of limitation, Ohio Rev.Code §§ 2305.11 and 2305.111; in so doing, the Circuit refused to apply either the general bodily injury action limitation of two years, Ohio Rev.Code § 2305.10, or the residual limitation of four years embodied in Ohio Rev.Code § 2305.09(D). *Mulligan,* 777 F.2d at 343.

The Sixth Circuit's standard has now been rejected by the Supreme Court of the United States and by the Circuit itself. Less than three weeks after this Court's December 22 opinion, the Supreme Court

noted the varied manner in which its *Wilson* decision was being implemented; it unanimously ordered that "where state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions." *Owens v. Okure,* — U.S. —, —, 109 S.Ct. 573, 582, 102 L.Ed.2d 594 (1989).

Plaintiff's motion for reconsideration, therefore, is not only well-taken, it is unopposed. In her memorandum supporting the motion, plaintiff suggests that the standard now applicable is the four-year "residual" statute, Ohio Rev.Code § 2305.09(D), rather than the two-year "general" statute, Ohio Rev.Code § 2305.10. However, while the Supreme Court's guidance as to the choice between the general or the residual statute is less than precise, the United States Court of Appeals for the Sixth Circuit, sitting en banc, has just held that "the two-year limitations period [of] Ohio Rev. Code Ann. § 2305.10, is the appropriate statute of limitations for actions arising in Ohio under 42 U.S.C. § 1983." *Browning v. Pendleton,* 869 F.2d 989, 990 (6th Cir. 1989). That is dispositive of the matter, and the Court declines the plaintiff's invitation to adopt a four-year rule. Nevertheless, the pleadings assert that the significant events giving rise to the § 1983 cause of action occurred within a two year period before the complaint was filed. Accordingly, the Court orders the claims under 42 U.S.C. § 1983 reinstated.

As a result of this and prior orders of the Court, following is a summary of the status of the causes of action:

(1) the federal civil rights claims for compensatory and punitive damages under 42 U.S.C. § 1983 remain against defendants Dahlberg and Prigmore in their personal capacities, *Owens, supra;* but they have been dismissed against them in their official capacities and against the defendant State entities. *Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355–56, 39 L.Ed.2d 662 (1974).

(2) the separate claim of a cause of action arising directly under the Fourteenth Amendment has been dismissed as against all defendants, because § 1983 "is the exclusive remedy for the alleged constitutional violations." *Thomas, supra,* 818 F.2d at 499.

(3) the claim for reinstatement and back pay under 42 U.S.C. § 2000e et seq. remains against all defendants. *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986).

(4) the pendent state claim for battery has been dismissed as to all defendants. Ohio Rev.Code § 2305.111.

(5) the pendent state claims for compensatory and punitive damages for invasion of privacy remain against defendants Dahlberg and Prigmore, *Phillips v. Smalley Maintenance Services, Inc.,* 711 F.2d 1524, 1531 (11th Cir.1983); but they have been dismissed against the defendant State entities. *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 104–06, 104 S.Ct. 900, 910–11, 79 L.Ed.2d 67 (1984).

(6) the pendent state claims for compensatory and punitive damages for intentional infliction of emotional distress remain against defendants Dahlberg and Prigmore, Wolman, *Verbal Sexual Harassment on the Job as Intentional Infliction of Emotional Distress,* 17 Cap.U.L.R. 262–66 (1988); but they have been dismissed against the defendant State entities. *Pennhurst, supra.*

Finally, the parties have consented to trial before the United States Magistrate. Accordingly, this matter is hereby transferred to United States Magistrate Terence P. Kemp for scheduling of further discovery and for disposition on the merits.

IT IS SO ORDERED.