878 F.2d 1436
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
CODY CRAWFORD, Jr. Plaintiff-Appellant,
v.
THE BROADVIEW SAVINGS AND LOAN COMPANY, Defendant-Appellee.
 No. 88-3694.
 United States Court of Appeals, Sixth Circuit.
 July 10, 1989.
 
 Before KENNEDY, RALPH B. GUY, Jr. and ALAN E. NORRIS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff, Cody Crawford, appeals the district court's orders dismissing his race discrimination action, filed pursuant to 42 U.S.C. Sec. 1981, and awarding judgment in favor of defendant, The Broadview Savings and Loan Company (Broadview), on his Title VII race discrimination in employment claim, filed pursuant to 42 U.S.C. Sec. 2000e, et seq.[1] On appeal, Crawford claims that the district court applied an incorrect statute of limitations in dismissing his section 1981 claim, improperly applied the standards governing Title VII race discrimination in employment cases, and rendered a decision that is not supported by the evidence. We conclude that the district court applied what has become an incorrect statute of limitations to Crawford's section 1981 claim. We also find that the error was harmless in view of our further conclusion that Crawford's failure to make out a Title VII claim, in this case, also bars his section 1981 claim. Accordingly, the district court's orders are affirmed.
 
 
 2
 Cody Crawford, a black male, was employed by Broadview from September 1979 until June 1984. He began as a management trainee and was promoted to assistant branch manager of the downtown branch in 1980, and to manager of the Shaker Square branch in 1982. His promotions were prompted by good reviews and accompanied by pay raises. He served in his managerial position until January 1984, when he was demoted to assistant branch manager at the downtown branch. In June 1984, Crawford was discharged. The circumstances leading to his demotion and discharge indicate that while Crawford was a branch manager, the bank continued to be plagued by numerous "outages" as a consequence of the tellers' chronic inability to balance their daily accounts. These deficiencies were discovered during audits of the Shaker Square branch and were discussed with Crawford. Although Crawford reported subsequent improvements, teller outage reports indicated that the problem persisted. In an attempt to rectify the problem, Ted Mowen, Broadview's regional director of the Shaker Square branch, ordered Crawford to place three tellers on probation and to let him review the probation letters before they were given to the tellers. Crawford drafted and distributed the probation letters without first submitting them to Mowen. Moreover, each letter contained an addendum written by Crawford expressing his disagreement with the action.[2] Mowen regarded Crawford's conduct as insubordination by a management employee. Consequently, a meeting was held at corporate headquarters among Crawford, Mowen, and Mowen's supervisor, Ray Teed, to discuss Crawford's conduct and the continued outage problems. By the end of the meeting, Crawford was demoted to assistant manager of the downtown branch and was placed on probation for ninety days because of his insubordination and the continued outages. His demotion was not accompanied by any reduction in pay. Crawford assumed his new duties in January 1984, under the supervision of that branch's manager, Ray Eier. Over the next five months, numerous complaints were lodged against Crawford by both customers and employees. The complaints concerned his purportedly abusive manner and led one employee to resign. For example, one customer indicated that following a dispute over a check cashing procedure, Crawford challenged him to "meet him outside" at 4:30 p.m. In other instances, however, the evidence indicates that the customers became abusive first. One complaining customer was later implicated in attempting to pass stolen checks. After personally speaking to Crawford and the complaining customers and employees, Eier discussed the situation with his supervisor, Teed. Teed terminated Crawford's employment on June 8, 1984, after two complaints against Crawford in one day, without following Broadview's written termination procedures. Subsequent to his termination, Crawford received a right to sue letter from the EEOC and, on December 30, 1985, filed his complaint alleging both Title VII and section 1981 violations.
 
 I.
 The Section 1981 Claim
 
 3
 As noted, Crawford did not file his complaint until over a year and a half after he was terminated. The district court dismissed his section 1981 claim as barred by the one-year statute of limitations applicable to personal torts in Ohio. Crawford claims that because his complaint concerned the contractual relationship between an employer and an employee, his claim was subject to a five-year statute of limitations applicable to contract actions in Ohio.[3] We find that the district court erred in applying a one-year statute of limitations to Crawford's section 1981 claim, but not for the reasons he advocates.
 
 
 4
 We begin by noting that, in Wilson v. Garcia, 471 U.S. 261 (1985), the Supreme Court directed federal courts to apply each state's statute of limitations governing personal injuries to section 1983 actions. Thereafter, in Mulligan v. Hazard, 777 F.2d 340 (6th Cir.1985), cert. denied, 476 U.S. 1174 (1986), we concluded that "Wilson implicitly mandates that its holding be applied retroactively." Id. at 344. Accordingly, noting that Ohio law then provided both a one-year statute of limitations for intentional torts and a two-year statute of limitations governing bodily injury, Ohio Rev.Code Ann. Sec. 2305.10, .11,[4] we adopted the one-year statute of limitations for section 1983 actions, finding it more appropriate for actions arising under the civil rights statutes. Accordingly, based on Wilson and Mulligan, we employed a one-year statute of limitations for section 1983 actions in Ohio. See, e.g., Thomas v. Shipka, 818 F.2d 496 (6th Cir.1987), clarified on reh'g, 829 F.2d 570 (6th Cir.1987), vacated and remanded, 109 S.Ct. 859 (1989), vacated and remanded, 872 F.2d 772 (6th Cir.1989). Moreover, in Demery v. Youngstown, 818 F.2d 1257 (6th Cir.1987), we joined the majority of circuits that had confronted the issue and found that Wilson's directive to apply each state's personal injury statute of limitations in section 1983 actions applies equally to section 1981 actions. Accordingly, we determined that the one-year limitation period that we found retroactively applicable to section 1983 actions in Mulligan applied equally and retroactively to section 1981 actions. 818 F.2d at 1261.
 
 
 5
 This did not end the confusion, however, because another panel in our circuit found that section 1983 actions arising in Michigan were governed by that state's residual three-year statute of limitations governing personal injury claims as opposed to two different, more specific statutes of limitations applicable to personal injuries. See Carroll v. Wilkerson, 782 F.2d 44 (6th Cir.) (per curiam), cert. denied sub nom. Wayne v. Carroll, 479 U.S. 923 (1986). In our en banc case, Browning v. Pendleton, 869 F.2d 989 (6th Cir.1989), with the benefit of the Supreme Court's recent opinion in Owens v. Okure, 109 S.Ct. 573 (1989), we laid the matter to rest. In Owens, the Supreme Court closed the gap left open in Wilson by proclaiming that when state law provides for more than one statute of limitations for personal injury actions, section 1983 actions should be subjected to the state's general or residual personal injury statute of limitations and not any statute of limitations governing specific intentional torts. Accordingly, as we held in Browning, the proper statute of limitations governing section 1983 actions arising in Ohio is two years. Ohio Rev.Code Ann. Sec. 2305.10; Browning, 869 F.2d at 992. Likewise, section 1981 actions arising in Ohio also are subject to the two-year statute of limitations. Demery, 818 F.2d 1257.[5]
 
 
 6
 As for Crawford's claim that his section 1981 claim should be governed by Ohio's statute of limitations for contract actions, we note that the Supreme Court in Goodman v. Lukens Steel Co., 482 U.S. 656 (1987), rejected the notion that section 1981 concerns primarily the execution and enforcement of contracts or the economic consequences of contracts. The Court noted that "[i]nsofar as [section 1981] deals with contracts, it declares the personal right to make and enforce contracts, a right ... that may not be interfered with on racial grounds." Id. at 661. Hence, section 1981 protects one's competence and capacity to contract from racial discrimination. See also Demery, 818 F.2d 1257, 1262-63 (Guy, J., dissenting).
 
 
 7
 Our next inquiry concerns the retroactivity of Owens and Browning. Generally, the law existing at the time of a decision governs the outcome of federal cases. Goodman, 482 U.S. at 662. We previously have given the directive of Wilson virtually automatic retroactive effect. See Mulligan, 777 F.2d at 343-44; Demery, 818 F.2d at 1261. Since then, the issue of retroactivity has been developed further. The Supreme Court in recent cases has indicated that the principles of Chevron Oil Co. v. Huson, 404 U.S. 97 (1971), govern the retroactivity of recently adopted statutes of limitation. See St. Francis College v. Al-Khazraji, 481 U.S. 604 (1987); Goodman, 482 U.S. 656. Notwithstanding the general rule that the law existing at the time of decision governs federal cases, Chevron Oil provides that a statute of limitations should be given only prospective effect when it overrules "clearly established Circuit precedent on which the complaining party was entitled to rely," when "retroactive application would be inconsistent with the purpose of the underlying substantive statute," and when retroactive application would be "manifestly inequitable." St. Francis College, 481 U.S. at 608-09 (construing Chevron Oil ).
 
 
 8
 In this case, if we applied current law retroactively, Crawford's claim would not have been barred because it was filed within the now recognized two-year statute of limitations applicable to section 1981 claims. Nothing in Chevron Oil persuades us that the newly recognized two-year statute of limitations should be given only prospective effect. That is, the only precedent overruled by the adoption of the two-year statute of limitations is the one-year limitation that would have barred Crawford's claim. In this case, retroactive application inures to Crawford's benefit. Moreover, we are not persuaded that retroactive application would be inconsistent with the purposes of the underlying substantive statute or manifestly inequitable. Accordingly, we conclude that Crawford's section 1981 claim falls within the two-year statute of limitations applicable to his claim such that dismissal on statute of limitations grounds is improper. Nevertheless, for the reasons discussed below, we conclude that, in this case, the trial court's reliance on a now inappropriate statute of limitations constitutes harmless error.
 
 II.
 The Title VII Claim
 
 9
 Pursuant to 42 U.S.C. Sec. 2000e-5(f)(5),[6] the district court transferred Crawford's Title VII claim to a magistrate to act as a special master for trial. The magistrate conducted a five-day trial and found against Crawford. The district court reviewed the magistrate's report, Crawford's objections to the report, and concurred in the magistrate's findings and conclusions. Accordingly, the court entered judgment in favor of Broadview.
 
 
 10
 On appeal, Crawford challenges the court's decision as unsupported by the evidence and claims that the court improperly applied the standards set forth in McDonald v. Santa Fe Trail Transp. Co., 427 U.S. 273 (1975), and United States Postal Service Bd. of Governors v. Aikens, 460 U.S. 711 (1983), in adjudicating his claim.
 
 
 11
 Crawford's racial discrimination claim is predicated on a salary differential between himself and similarly situated white employees, his demotion, and his discharge. As evidence of Broadview's racial discrimination, Crawford claims that, unlike white branch managers, he was not permitted to choose his own head teller and was instead saddled with an unenthusiastic head teller with a history of outages. Moreover, unlike white branch managers, Crawford allegedly was forced to operate at a lesser salary and with insufficient staff. Crawford cites his excellent work record with the bank and claims he was penalized for his endeavors to uncover various fraudulent checking schemes. Finally, Crawford claims that, unlike white employees, his discharge was not in accord with procedures contained in the company's personnel manual.
 
 
 12
 Both the magistrate and district court observed that under the various standards set forth for making out a Title VII claim, see, e.g., McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973),[7] Crawford made out a prima facie case and was entitled to a rebuttable presumption that Broadview intentionally discriminated against him based on his race. Broadview, however, advanced legitimate non-discriminatory justifications for its actions. Therefore, in accordance with the principles set forth in Aikens, 460 U.S. at 714-15, the rebuttable presumption drops out and the factfinder must determine whether, in fact, Broadview intentionally discriminated against Crawford. Accordingly, the focus at trial properly was on Crawford's ability to prove that Broadview's proffered justifications for its actions were pretextual, masking intentional race discrimination. We find nothing improper about this framework for analyzing Crawford's claim.
 
 
 13
 In the estimation of both the magistrate and the district court,[8] Crawford failed to sustain his burden of proof. The court found that Broadview's account of the events culminating in Crawford's discharge was more plausible and reasonable than Crawford's. His claims of disparate treatment simply were not supported by the evidence. For example, although Crawford alleged that he was not given the same discretion as white branch managers to choose his own head teller, the evidence revealed that no branch manager was given absolute authority to appoint head tellers. Rather, the regional managers enjoyed such authority, as well as the discretion to approve or reject candidates recommended by branch managers. In Crawford's case, his recommended black candidate was rejected because of a "tardiness problem." Moreover, the district court noted that it would be difficult to extrapolate from Crawford's isolated example that head tellers recommended by branch managers were accepted or rejected based on their race.
 
 
 14
 As for Crawford's claim of disparate salary, the magistrate found Crawford's proofs inadequate to demonstrate disparity between his salary and that of similarly situated white employees. Branch managers' salaries vary within a particular grade level based on total time of service, tenure as a branch manager, earnings at the time of appointment, and size of the branch managed. Shaker Square was the smallest branch in Broadview's network. When Crawford was appointed to branch manager of the Shaker Square branch, he had been employed by Broadview for only two and one half years. His starting salary was $12,500. He received four raises since his hire and was earning $15,500 at the time of his promotion to branch manager. As manager, Crawford's salary increased to $17,000. No evidence was provided that demonstrated that a white branch manager with a comparable employment history was earning more than Crawford.
 
 
 15
 Crawford's claim of disproportionate staffing levels based on race were similarly rejected because the evidence indicated that relative branch size, and not race, determined whether a given branch manager was entitled to a secretary and a savings counselor. Broadview demonstrated that irrespective of whether they were black or white, managers of branches of comparable size to Shaker Square also operated without a secretary or savings counselor.
 
 
 16
 Crawford's exemplary work record up until the episodes of insubordination and repeated customer complaints does not render his demotion and discharge racially motivated. In fact, Crawford progressed up the ranks from management trainee to branch manager with Broadview's blessings. Broadview promoted him and granted him pay raises along the way. As the district court noted, however, even exemplary employees are capable of transgressions sufficient to warrant their termination. Crawford's demotion was tied directly and primarily to his unsolicited addendum to the tellers' probation notices. Likewise, his termination was triggered by two customer complaints in one day, which capped off a series of such customer and employee complaints about Crawford's abusive manner. Although the magistrate suggested that the customer complaints were not adequately investigated, we find no reason to believe that the insubordination and customer complaints relied on by Broadview in demoting and terminating Crawford veiled the company's racially discriminatory intent, particularly since the company hired and promoted him to the status he is now complaining of having lost. Accordingly, the district court was not persuaded by Crawford's proffered proofs that the company's lack of in-depth investigations or its deviation from disciplinary policies was race related. Crawford simply failed to show that similarly situated white employees were treated less severely or that he was singled out for such treatment. The fact that one of the complaining customers was later implicated in fraudulent checking activities does not exonerate Crawford for the conduct giving rise to the customer complaint in the first place. Moreover, although the employee manual indicates that Crawford's demotion and discharge should have been preceded by a more thorough investigation, such departures from procedure are not significant for Title VII purposes unless Crawford can show that similarly situated white employees received different treatment. The court found that, in this case, company procedures were rarely followed for any employee, black or white. The court was not persuaded that the company's departure from procedure was instigated by racial considerations. In fact, the evidence disclosed that two white employees also were terminated in contravention of company policy. For all of these reasons, the district court concluded that Crawford failed to establish that Broadview's proffered justification for its conduct was a pretext for intentional racial discrimination.
 
 
 17
 Based on our independent review of this case, we conclude that the district court's judgment reflects a proper assessment of the facts and the law as applied to those facts.[9] Accordingly, we affirm that court's judgment regarding Crawford's Title VII claim.
 
 III.
 
 18
 The Impact of the Resolution of Crawford's Title VII Claim on His Section 1981 Claim
 
 
 19
 We next consider the effect of Crawford's failure to make out a Title VII claim on his section 1981 claim.[10] We have already noted the requisite standards for establishing liability under Title VII. Section 1981 provides:
 
 
 20
 All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
 
 
 21
 42 U.S.C. Sec. 1981.
 
 
 22
 Crawford's section 1981 claim is predicated on his disparate treatment, which necessitates a showing of intentional discrimination. See Murray v. Thistledown Racing Club, Inc., 770 F.2d 63, 69 (6th Cir.1985), in which we noted that "[i]t is well settled that an action based upon 42 U.S.C. Section 1981 requires the plaintiff to demonstrate that the defendants intentionally discriminated against her on the basis of race." (Citations omitted). As previously noted, Aikens, 460 U.S. 711, provides that in a Title VII case, when a plaintiff invokes a rebuttable presumption of racial discrimination by making out a prima facie case, and the employer articulates legitimate non-discriminatory reasons for its challenged conduct, the rebuttable presumption drops out and the district court proceeds to resolve "the ultimate factual issue in the case ... '[whether] the defendant intentionally discriminated against the plaintiff.' " Id. at 715, quoting Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). Once a Title VII case proceeds to this state, as Crawford's case did, the Title VII inquiry is no different than that required in this case under section 1981. Accordingly, in view of Crawford's failure to demonstrate that Broadview's proffered reasons for its alleged racially discriminatory conduct were a pretext for intentional discrimination, his section 1981 claim must fail. Hence, the trial court's erroneous application of a one-year statute of limitations to Crawford's section 1981 claim was harmless error and we affirm the dismissal of that claim.[11]
 
 
 23
 For the foregoing reasons, we AFFIRM the district court's orders.
 
 
 
 [1]
 Crawford's section 1981 claim was dismissed as time-barred by district court order dated April 1, 1986. His Title VII claim was disposed of by district court order dated June 29, 1988. Although Crawford's notice of appeal only designates the latter order, we, nevertheless, treat his appeal as encompassing the April 1, 1986, disposition of his section 1981 claim. See Fed.R.App.P. 3(c) ("An appeal shall not be dismissed for informality of form or title of the notice of appeal.")
 
 
 [2]
 For example, in the letter to teller Sandra Ingram, the addendum stated:
 I Cody Crawford Jr. Br. Mgr. do not agree with this particular probation, yes it is the responsibility of a teller to balance the window to the penny daily and outages have to be held to the absolute minimum, but consider this; Sandra assumes the Head Teller duties at Br # 39 on all occasions when the designated Head Teller is on vacation, absent, etc. She has performed these duties since 1980 besides other assigned task[s]. [C]ustomers praise her work daily. Call Mr. Roland Neroni $139,107.97 ... BSL customer. Sandra Ingram is a valuable Broadview Savings & Loan employee in customer service, public relations, comes to work everyday with an excellent attitude, attracts and retains customers for Broadview Savings.
 In my opinion this probation is not fair or consistent when you take in[to] consideration Sandra Ingram['s] over-all performance in the prestigious Shaker Square Community.
 (App. 99-99A).
 
 
 [3]
 Crawford cites no authority for this purported statute of limitations for contract actions. In fact, the statutes of limitations governing contracts in Ohio are fifteen years for written contracts, Ohio Rev.Code Ann. Sec. 2305.06, and six years for oral contracts, Ohio Rev.Code Ann. Sec. 2305.07
 
 
 [4]
 We note that, currently, Ohio Rev.Code Ann. Sec. 2305.10, .11 each provide for a two-year statute of limitations
 
 
 [5]
 Accordingly, we overruled our contrary holding in Mulligan and corrected, on remand from the Supreme Court, our holding in Shipka. See 872 F.2d 772 (6th Cir.1989)
 
 
 [6]
 That section provides:
 It shall be the duty of the judge designated pursuant to this subsection to assign the case for hearing at the earliest practicable date and to cause the case to be in every way expedited. If such judge has not scheduled the case for trial within one hundred and twenty days after issue has been joined, that judge may appoint a master pursuant to rule 53 of the Federal Rules of Civil Procedure.
 
 
 [7]
 McDonnell Douglas, 411 U.S. 792, 802-805, set forth a three-part analysis for evaluating Title VII claims alleging race discrimination. First, a plaintiff must make out a prima facie case of race discrimination. The burden then shifts to the employer to provide legitimate non-discriminatory reasons for the employee's termination. Thereafter, the burden returns to the plaintiff to demonstrate that the proffered reasons are pretexts for intentional racial discrimination
 
 
 [8]
 We note that although the district court was cognizant that its review of the special master's report is subject to the clearly erroneous standard, the court, nevertheless, indicated that its scrutiny of the report approximated the more stringent de novo standard. (App. 184B)
 
 
 [9]
 In Taylor Gaskin v. Chris-Craft Industries, 732 F.2d 1273 (6th Cir.1984), we noted that an appellate court reviews de novo "findings of ultimate facts which result from the application of legal principles to subsidiary factual determinations" and that "conclusions of law are excluded from the clearly erroneous standard of Rule 52(a), and are therefore also subject to the de novo review of this court." Id. at 1277
 
 
 [10]
 Crawford did not request a jury trial on his section 1981 claim
 
 
 [11]
 We also note that, to the extent that Crawford's complaint is based on racial discrimination in the terms and conditions of his employment, his complaint is not actionable under section 1981. In the recently decided case, Patterson v. McClean Credit Union, 57 U.S.L.W. 4705 (June 15, 1989), the Supreme Court declined to overrule its former decision in Runyon v. McCrary, 427 U.S. 160 (1976), which prohibits racial discrimination in making and enforcing private contracts. Although the Court construed section 1981 as encompassing a cause of action under section 1981 for racial discrimination in hiring and in certain promotions in the private sector, it declined to find racial harassment in private employment actionable under section 1981. The Court explained that section 1981 does not encompass conduct that follows contract formation or that does not interfere with one's right to enforce established contractual duties. The Court noted that an employer's discriminatory conduct regarding the terms and conditions of continuing employment is actionable only under Title VII